RuppxN, Judge,
 

 after stating the facts, proceeded: The first thing-to be done in support of
 
 BisseWs
 
 claim is, to establish a debt to
 
 Myers.
 
 In that view, it might be material to enquire, whether a general advance of money to the captain is a disbursement for the ship, without showing the purposes to which it was applied, or at least was tobe appled. The item of “customhouse bill” might also need explanation; for of itself it is not sufficient to charge a consignor,. who has a right to the particulars, especially when there is a probability, from the nature of the charge, and the delay in presenting the whole claim, that it might have been included in other general charges.
 

 Questions might also be raised upon the right of a surety to charge his principal by the acknowledgment or voluntary payment of a debt, barred by the statute of limitation, on which
 
 Boxman
 
 insists. But as the protection to which
 
 Bissell
 
 was entitled against this demand, has a foundation much more meritorious than mere lapse of time, I do not think it worth while to consider the effect of that.
 

 Has
 
 Bissell
 
 paid
 
 Myers
 
 &
 
 Son ?
 
 If he has, was he so liable to them as to enable him by paying them, to make
 
 Boxman
 
 his debtor?
 

 There seems to be no reason to doubt, that in a port, not the vessel’s own, proper disbursments on, or for the vessel, constitute a demand for which, the vessel, the master and the owner are all liable. As to the master, this is a departure, introduced for the sake of trade, from the general principle, that he who acts as agent, and is known as such, is not bound personally, unless he expressly promise. Whatever may be the grounds of this rule in reference to strangers, as between him and his owner, the master is in the nature of a surety,
 
 *232
 
 ln that character, he recovers back from the owner any ' monies he has paid, and has a lien upon the ship for ad-vanees, standing in the place of those whose claims he ]ias satisfied. And in that light he must be viewed by the consignee of the ship and her cargo ; at all events as fa[. as the proceeds of the cargo will serve to satisfy the consignee, or indemnify the captain. It the consignee, ag wcij ag strangers, has the right to regard the captain in ordinary cases as the owner, because in possession, and another owner may riot be found, yet a consignee with funds does know the owner in the most effectual manner. When the master thus leaves behind him tho means of paying tho debt, for which lie was liable, and in the hands ofthc man to whom the debt is due, lie feels that he has no right to retain tho vessel, and readily gives her up to the owner., thereby parting from the security given him by the law for his indemnity. The consignee can retain his whole demand out of the proceeds of the cargo. Common sense and common honesty say, the debt is paid as to the surety. It is not the ordinary case of a creditor getting a security of his own provision. Even then, the creditor is bound in good faith to take care of tho surety. The relation between them calls for that benevolence. B ut here the surety himself provides the security, lie docs it for his own benefit, as well as that of the creditor. The creditor cannot part from it to the prejudice of the surety. He cannot say, he did it by mistake ; hut must boar the consequences of his ow n mistake, and ought not afterwards to look to any body but the principal.
 
 BisseU
 
 was competently discharged ; and I think in no court of justice couid a recovery have been made him.
 

 The captain is liable as the surety has, as to him, all the rights of one.
 

 Tlie captain ditóhavgedfromh-ability to the con-se-neV, cannot af-lect. the relations tween him and tho a sabs-'quentpay^ menttotheformer can ho make, tho latter lus own debtor.
 

 yf as he aware of his discharge? Expressly on that ° ‘ ^ ground, he refused to pay the demand in 1820, and so :¡¡f0..Enei]
 
 Boaman.
 
 Then could he afterwards pay
 
 Myers
 
 &
 
 Sou,
 
 and make the debt his own? I am now supP0íi^!S that
 
 Boxnuin
 
 owed
 
 Myers
 
 &
 
 Son,
 
 and that the latter bad a remedy against him. Could
 
 BisseU
 
 inter- > j Yhiiik. not. The connexion between them was * dissolved. He was cut loose, and had no right nor power
 
 *233
 
 to untie
 
 Bozman
 
 from
 
 Myers,
 
 for the sake of getting a faster hold himself.
 
 Bozman
 
 had a right to prefer
 
 Myers
 
 &
 
 Son
 
 for creditors ; he might be able to pay them easier, or to resist this demand altogether when made by them. Having gotten clear,
 
 Bissell
 
 could not again make himself a party, but by a new request from
 
 Bozman
 
 like any other stranger. This is not like reviving a debt, barred by the statute of limitations, by the acknowledgment of a surety. Here there was no debt remaining as far as concerned Bissell. He was under no obligation legal or moral, except not to interfere to the prejudice of either party. And that obligation was increased by the refusal of
 
 Bozman
 
 to
 
 Myers
 
 &
 
 Son;
 
 of which no doubt,
 
 Bissell
 
 was informed, in answer to his letter of July, 1820 — a refusal not founded
 
 on
 
 the ground that the disbursements had not been made, or had been paid for by
 
 Bissell,
 
 or any thing else, which
 
 Bissell
 
 could know to be false ; but on the ground that
 
 Bozman
 
 had himself paid. And if
 
 Bissell
 
 did not get that information from
 
 Bozman
 
 in 1820, ho did from Mr.
 
 Myers in 1824,
 
 before be assented to the arrangement made by
 
 Myers
 
 &
 
 Son
 
 of his debt. After
 
 Bissell
 
 was discharged, and he knew it; after
 
 Bozman
 
 had refused to pay, which ho also knew; after the lapse of eight years, for four of which
 
 Myers
 
 &
 
 Son
 
 had abandoned their claim against
 
 Bozman,
 
 or not prosecuted it; it was out of the power of
 
 Bissell
 
 and
 
 Myers ‡ Son by
 
 any act or agreement of theirs’, to resuscitate this demand against
 
 Bozman,
 
 and especially to transfer him to
 
 Bissell.
 
 But has
 
 Bissell
 
 paid it, or even agreed to pay it?
 
 Myers
 
 makes it appear in his books that he did. But the fact is not so.
 
 Bissell
 
 never assented to that application of his money. They promised a dividend on the balance. He rejected it, and demanded the whole. They assigned as a reason for their conduct, the refusal of
 
 Bozman to
 
 pay them. Did that appear to
 
 Bissell
 
 to be a good reason? Did he think that he and
 
 Bozman.were
 
 both bound, or that the refusal of the latter made him,
 
 Bissell,
 
 bound? Did he act on such a belief? No. He made no settlement with
 
 Myers;
 
 took no receipt for the money, no order on
 
 Bozman.
 
 He gave *
 
 *234
 
 no acquittance to
 
 Myers
 
 for so much of his own money ; but kept bis demand open, as a subsisting one, which ho would have rendered available, but for
 
 Myers’
 
 insolvency. When the present controversy arose, he thought he could use it to more advantage in it, and therefore, pursued his claim against the others no further.
 

 A master cannot act upon facts which are within his own knowledge.
 

 A mortgagee who sells without a foreclosure is responsible fdr the value of the property sold.
 

 Upon no ground can the claim be sustained, and the exception must be allowed.
 

 As lo the other exception, the master says, that he could form no satisfactory opinion of the value of the slave upon the testimony of the witnesses, because they differed so widely | and fixed the value upon his own knowledge. That was not a proper ground for him to proceed on ; for we cannot act on it, and must decido upon the evidence. Upon the weight of that, the court ascertains the value to be §5200. That
 
 Boxman
 
 objects to, because he thinks the other party confined to §5153, the price bid. The court has already said, the effect of that sale under the act of 1812, whatever it may bo, is waived by the cross bill to foreclose. We must now look upon it as a sale by
 
 Bosnian
 
 himself; confirmed, indeed, by
 
 Bissell,
 
 by not making the purchaser a party to his bill. But bow far does that confirmation go? Only to the title, not to the price. Suppose the slave sent to distant parts, so that
 
 Bissell
 
 could not reach him, or sold to a person without notice. The mortgagee who soils without a decree, must be sure to get the full value ; for be is parting with another man’s'property. The expression, “price or value,” used in this case before, meant, that- if the price exceeded the value,
 
 Bissell
 
 was entitled to it; if less, then to the valué. That is the risk a mortgagee must bo made to run, to keep him straight
 

 Per Curiam. — Decree accordingly.