[Freeeman *et al.* v. Pullen, Surviving Partner.]

# Freeman *et al.* v. Pullen, Surviving Partner.

*Bill in Equity to set aside Fraudulent Conveyance and to subject Property to Payment of Debts.*

1. *Bill to subject property fraudulently conveyed; amendment; when no departure and not repugnant.*—A bill in equity as originally framed sought to set aside a conveyance as fraudulent, and to subject to the payment of plaintiff's demands property known as the L. land, which it was alleged had been bought by the deceased debtor in the name of his wife and paid for with his money. Subsequently upon its being shown that the land sought to be subjected had been paid for in part by the rents from a hotel, which had formerly belonged to the deceased debtor, the complainant amended his bill and alleged that the conveyance by which the deceased debtor had parted with the hotel and other property, which hotel and property had been reconveyed by his grantee to his wife, was also fraudulent, and by his amendment he sought to have the rents which had been collected by the deceased debtor's wife from said hotel, condemned as the property of the deceased debtor, and so much of them as had not been appropriated to the payment of the L. land, applied to the payment of complainant's debts. *Held*: That there was no departure, repugnancy or inconsistency between the amendment and the original bill.

2. *Fraudulent conveyance; rights of bona fide purchaser.*—Where one purchases and takes a deed to land from the grantee in a fraudulent conveyance from a debtor, and such grantee has apparently a good title, and the purchase is made in good faith and without the existence of any cloud or of any fraud in the execution of the original deed, such purchaser acquires a good title against the creditors of the debtor, although he paid but part cash and gave his note secured by a mortgage on the property for the balance.

3. *Equity practice; extent of relief authorized.*—Courts of equity in granting relief can not go beyond that which is authorized by the facts averred in the bill, no matter what the proof in the case may be.

APPEAL from the Chancery Court of Limestone.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellee, J. G. Pullen, as surviving partner of the firm of J. S. Childers & Co. against the appellant. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor granted the relief prayed for and ordered accordingly. From this decree the defendants appeal, and assign as error the overruling of the demurrers, the granting of the relief prayed for, and the rendition of the final decree.

W. R. FRANCIS, for appellant.—Unless the complainant is entitled to substantially the same relief under each aspect of the case and the same defenses are equally applicable to each, the bill is bad.—*Hall & Farley v. Henderson,* 114 Ala. 601.

The relief sought under the amendment is different from that sought in the original bill. Neither can the same defenses be set up to the amendment as to the original bill.—*Hall v. Henderson,* 114 Ala. 601; *Pollock & Co. v. Muscogee Manfg. Co.,* 108 Ala. 476; *Allen et al. v. Caylor,* 120 Ala. 251.

The averments of the amendment are at variance with the averments of the original bill, and the whole bill as amended is therefore bad.—*Magnetic Ore Co. v. Marbury Lumber Co.,* 112 Ala. 306. There is also a departure in the amendment from the averments of the original bill, which renders the bill as amended bad. *Berney National Bank v. Guyon,* 11 Ala. 491; *Truss v. Miller,* 116 Ala. 494.

Bill as amended is multifarious.—*O'Bear Jewelry Co. v. Volfer,* 106 Ala. 205; *Schuser v. Agee,* 106 Ala. 139; *Banks v. Spears,* 103 Ala. 436; *Teal v. Chancellor,* 117 Ala. 612; *Bullock v. Knox,* 96 Ala. 105.

The defendants have proven the existence of the debt due from H. S. Freeman to Oldacre, as the consideration for the conveyance to Oldacre, the burden is shifted to complainant to overcome this with legal and

competent evidence, and show that the conveyance was voluntary and fraudulent. This he has failed to do. *Morrow v. Campbell,* 118 Ala. 330; *Collins v. Griffith,* 94 Ala. 394; *Buford, McLester & Co. v. Shannon,* 95 Ala. 205; *Pollack v. Meyer,* 96 Ala. 174. "In an action attacking a sale made by an insolvent debtor to his creditor in payment of an indebtedness, when the purchaser offers evidence tending to show a *bona fide* indebtedness, which is not materially less than the value of the property, the burden is then shifted to the attacking creditor to prove that by the transaction a benefit was reserved to the debtor."—*Morrow v. Campbell,* 118 Ala. 330.

E. W. GODBEY, *contra.*—The bill originally averred that the purchase money for the farm was paid by H. S. Freeman, with his funds, etc. The amendment shows that it was paid for in part by rents due to him on the Decatur property. This was still insisting that the farm was liable to subjection at complainant's instance, because property purchased with rents due him on other property were rents manifestly as liable to his preexisting debts as any other money or means or funds he might have. When it comes to asking for a judgment for converted rents, we pray for a decree for rents for this other property fraudulently conveyed. But, as before stated, we expressly limit our claim to rents *in excess* of these applied in a roundabout process on the farm. There is no shadow, here, of inconsistency or double claim. The farm is liable to our debt because paid for in part, with rents really due to Freeman, on property fraudulently conveyed, but yet retained so far as beneficial enjoyment was concerned; and the remainder of the rents, *not* so applied, are liable to our debt for the same reason.

The facts of the case show that the conveyance was fraudulent, and that the complainant was entitled to the relief prayed for.—*Shepherd v. Reeves,* 114 Ala. 281; *Hubbard v. Allen,* 59 Ala. 283; *Harrell v. Mitchell,* 61 Ala. 270; *Thompson v. Tower Manfg. Co.,* 104 Ala. 140; *Brooks v. Applegate,* 16 S. E. Rep. 585; *Suddeth v. Knight,* 14 So. Rep. 476; *Graves v. McDade,* 108 Ala.

420; Wait on Fraudulent Conveyances, § 376; *Kelly v. Connell*, 110 Ala. 543; *Price v. Mazange*, 31 Ala. 701; *Bank v. McDonnell*, 89 Ala. 447; *Cleveland Woolen Mills v. Sibert*, 81 Ala. 140.

TYSON, J.—The bill in this cause was filed by a simple contract creditor to subject property alleged to have been fraudulently conveyed. On former appeal rulings on demurrer were reviewed, and the decree overruling them affirmed.—119 Ala. 235. The bill as originally framed sought to subject to the payment of the complainant's demand a piece of land consisting of eighty acres called the Limestone land, which it was alleged had been bought by the deceased debtor, H. S. Freeman, in the name of his wife, and paid for with his money. On the return of the case, it being shown that the land sought to be subjected had been paid for in part by the rents of the Olive House, a hotel in Decatur, which had formerly belonged to the deceased debtor, the complainant amended his bill and alleged that the conveyance by which the deceased debtor had parted with the hotel and other property in Decatur, and which had been reconveyed by his grantee to his wife, was also fraudulent, and sought to have the rents which had been collected by the wife condemned as property of the deceased debtor, and so much of them as had not been appropriated to the payment of the Limestone property, applied to the payment of his debt. The amendment alleged in reference to the Limestone land sought to be subjected in the original bill, that H. S. Freeman, the deceased debtor, had not completed the purchase when he died, but that he had paid $65 of the purchase money to Rosa Edwards, one of Scearce's creditors, at his instance, and held a deed to his wife which was unacknowledged or witnessed. That after his death the defendant Oldacre, the son-in-law of the defendant R. E. Freeman, completed the purchase with Scearce for Mrs. Freeman and paid thereon $9 and $28 to J. H. Edwards for Rosa Edwards at the request of Scearce, and agreed to pay the further amount of $90 to P. J. Edwards for Scearce, and alleged that the sums of $28 and $9 were paid out of the assets of H. S. Free-

man's estate or from the money derived from the sale of the property to Hilliard Tate.

It will be well to note that the complainant does not seek to condemn to the payment of his debt the rents which had been appropriated to the purchase of the Limestone land. He sought to subject the Limestone land in lieu of these rents as well as the $65 alleged to have been paid to Rosa Edwards as purchase money at the instance of Scearce. Nor does he seek by his amended bill a personal decree against Mrs. Freeman for these items. It is only for any surplus of complainant's debt, interest and costs which may remain after applying thereto the proceeds of the sale of the Limestone lands a decree *in personam* is sought against Mrs. Freeman.

The bill as amended was demurred to, and decrees upon the demurrers were entered August 8, 1899, and the defendants given fifteen days in which to answer. Many of the assignments of error relate to the overruling of the demurrer to the amended bill. None of these are well taken. There is no departure, repugnancy or inconsistency between the amendment and the original bill. If the Limestone property was paid for with the assets of H. S. Freeman's estate, of course it would be liable for Freeman's debts as against all persons except *bona fide* purchasers for value; and when it is shown that the payment was in part made with the rents from the Olive Hotel standing in the name of Mrs. Freeman, it was competent for the complainant to aver and show that the property from which the rents were derived also had been fraudulently conveyed, and was in fact the debtor's property. This is what the amendment in effect alleged. If the property thus standing in Mrs. Freeman's name was the property of her husband, so far as his creditors are concerned, the rents derived from such property would be held by her as his property and liable to be subjected to their payment. It was not at all necessary for the complainant to ask the sale of the property the rents of which he seeks to subject. The bill as amended, therefore, is not open to the objections urged to it by the demurrer.

The averment in the complainant's pleading with reference to Hilliard Tate's purchase of the Limestone land is that he claims some interest in this land, the nature and character of which is to the complainant unknown. That he had knowledge of the infirmity of Mrs. Freeman's title and seeks to have a decree against him for the rental value of the lands since January, 1897, and for the value of the timber cut therefrom during his possession. By his answer it is fully disclosed that he purchased this land without any notice of the complainant's rights to subject it to Freeman's debts; indeed without any notice that Freeman had any connection with the land at all. As to his claim to this land it is averred and shown that he bought a legal title apparently good on its face from a party in possession, without any notice whatever of any equity to charge the property for the complainant's debts or any other debt. Tate was an illiterate colored farmer and cautious enough to get some of his white friends who could read and write and had more knowledge than he had about such matters to look into the title and tell him whether it was good. On the report that it was all right he made his purchase and went into possession before this bill was filed, paying one-fourth of the purchase money in cash and giving his notes and mortgage for the remainder. There is not the slightest evidence to impute a want of good faith to him, and being vested under such circumstances with the legal title, he holds an impregnable position. Being a *bona fide* purchaser for value, this land cannot be subjected to the complainant's debts. It may be, had the bill been amended so as to condemn the balance of the purchase money due by Hilliard Tate for this land, that the complainant, if otherwise successful, would have the right to charge the land for the balance due by him as purchase money, or by Tate's consent have the land sold and the proceeds first applied to reimbursing Tate for the cash payment he had made, and the balance applied to complainant's demand. But this cannot be done under the pleadings as they are now framed, and as framed no relief can be had as against Hilliard Tate.

*Dufphey v. Frenaye,* 5 Stew. & Port. 215; *Ware v. Curry,* 67 Ala. 274, 289, 290; 2 Pom. Eq. § 767; *Dowdell v. Applegate,* 7 Fed. Rep. 881; 3 Brick. Dig. 810, §§ 164 *et seq.*

It is also clear that complainant can have no relief against Mrs. Freeman. The original bill only sought to subject the Limestone land, which, as we have shown, cannot be done. By the amendment of August 29, 1898, a personal decree is sought against her for the rent of this land for the year 1896. But there is no proof that she received any rent for it for that year. By the amendment of March 6, 1899, a personal decree is only sought against her for any balance due complainant upon his debt after applying the proceeds of the sale of the Limestone land to the satisfaction of it *pro tanto.* Failing to subject that land, it would seem that no relief could be had under this amendment. However, if complainant's pleading could possibly be construed as seeking a personal decree for rents received by Mrs. Freeman from the Olive Hotel, other than those applied to the payment of the Limestone land, there is no proof that she received such rents. Nor as we have said are there any facts alleged upon which the complainant can predicate his right to subject the balance of the purchase money due by Hilliard Tate in the hands of Mrs. Freeman. Courts of equity in granting relief cannot go beyond that which may be authorized under facts alleged, no matter what the proof in the case may be. Nor can allegations avail without proof.

It follows from what we have said that the decree of the chancellor must be reversed, and a decree will be here rendered dismissing the bill without prejudice to complainant's rights to proceed against Mrs. Freeman and her interest if he sees proper.

Reversed and rendered.