# Morton v. Allen.

### *Bill to Declare a Deed Absolute a Mortgage and to Redeem.*

(Decided December 19, 1912. 60 South. 866.)

1. *Mortgages; Deeds as; Extrinsic Evidence.*—Where a contract is without fraud and does not contravene public policy a court of equity will enforce it according to its terms when entered into by competent parties, and will not make a new contract for the parties, but it may, in an action to have a deed absolute on its face declared a mortgage, ascertain from extrinsic evidence, either written or oral what was the real contract and enforce it as such.

2. *Same; Rule of Construction.*—A court of equity will lean to the theory that the transaction was a mortgage, in a contest as to whether such a transaction was a mortgage or a conditional sale of land.

3. *Same; Evidence; Sufficiency.*—The evidence stated and examined and held to sustain a claim that a deed absolute on its face was in fact a mortgage, it being admittedly either a conditional sale or a mortgage.

APPEAL from Jefferson Circuit Court.

Heard before Hon. JOHN C. PUGH.

Bill by Frank Allen against William Morton to declare a deed absolute on its face a mortgage and to redeem. From a decree for complainant respondent appeals. Affirmed.

CLAUDE D. RITTER, for appellant. The conclusions reached by the chancellor in this case that the deed was a mortgage was not authorized by the facts and the law. —*Haney v. Robertson,* 58 Ala. 27; *Tribble v. Singleton,* 158 Ala. 308; *West v. Hendricks,* 28 Ala. 226. The burden was on the complainant to establish the averments of the bill by strong and clear and convincing evidence.—*Reaves v. Abercrombie,* 108 Ala. 535; *Thomas v. Livingston,* 36 South. 851 and authorities cited.

LEADER & EWING and McARTHUR & HOWARD, for appellee. The sole question is to determine whether or not the transaction was a conditional sale or a mortgage. That is determined when it can be said that the relation of debtor and creditor existed before and after the transaction or if the transaction commenced in the negotiation for a loan of money; that a debt continued for the payment of which the vendor was liable and where there was a great discrepancy between the price paid and the value of the property. —*Irwin v. Coleman,* 55 South. 492 and authorities cited. The averments and proof in this case show substantially that the transaction originated in the loan of money, that the land was worth nearly double the amount advanced on it, and that the possession remain-

ed in the grantor by permisison of the grantee.—*Screws v. Threadgill*, 35 Ala. 334. Extrinsic evidence may be examined to ascertain what was the real contract.— *Rose v. Gandy*, 137 Ala. 330; *Peagler v. Stabler*, 91 Ala. 308. Courts of equity incline against conditional sales and generally treat such contracts as a mortgage where the controversy is whether the contract is the one or the other.—*Nelson v. Wadsworth*, 55 South. 120; *Vincent v. Walker*, 86 Ala. 883.

DE GRAFFENRIED, J.—The bill of complaint in this case was filed by Frank Allen against William Morton for the purpose of having a conveyance which is absolute on its face, and which was made by Frank Allen to William Morton on September 6, 1910, declared to be a mortgage, and to redeem. The deed conveys certain real estate situated at or near Boyles in Jefferson county. It recites a cash consideration of $6.25 and the assumption by the grantee, Morton, of a mortgage indebtedness then existing upon the property of $905. Frank Allen was residing upon the property, which consisted of something less than three acres, when the conveyance was made, and continued to reside there, occupying it as his home, until this bill was filed.

The deed is not what, on its face, it purports to be. As a part of the transaction which culminated in the execution of the deed, William Morton executed and delivered to Frank Allen what is termed a "lease sale contract," whereby Morton agreed to lease the property to Allen for a period of 52 months in consideration of $6.25 in cash paid by said Allen to Morton and the further sum of $1,029, "divided into fifty-two monthly payments of twenty dollars each for the first fifty-one payments, same being evidenced by fifty-one waive notes

payable, the first one October 15, 1910, and each successive month thereafter until December 15, 1914, and one payment of nine dollars due by note January 15, 1915." In this "lease contract" there is a provision that "at the end of the term ·if the party of the second part (Frank Allen) has complied with each and all the conditions of this lease, then the party of the first part (William Morton) agrees that the rent paid under this lease shall be considered a payment for said property and the party of the first part shall make and execute a deed conveying said property to the party of the second part." There is also in this same "lease contract" a further provision that, if Frank Allen should fail to comply with the terms of the lease contract as to the payment of the "rent" notes as they matured, and should become as much as two months in arrears during the first year of the existence of the lease, or as much as three months in arrears in such payments at any time thereafter, or should fail to pay the taxes on said property as it became due, etc., then all the money paid on the contract should be held as rent for said property, and the right of Frank Allen to a conveyance of the property should be at an end. We therefore have what purports—so far as the face of the deed is concerned—to be an absolute conveyance by Frank Allen of the land to William Morton, but what is not an absolute deed, but a deed, which is either a conditional conveyance or a mortgage to secure a debt.

Frank Allen claims that the deed and lease sale contract was, in realty, a mortgage to secure an indebtedness of $905 and the interest thereon. William Morton claims that the transaction amounted to a conditional sale of the property, and that it was so understood between him and Frank Allen when the papers were

signed and delivered. If Allen's contention is correct, then he is entitled to relief. If not, he is not.

(1) Undoubtedly a court of equity will not undertake to make a contract for parties who are sui juris. When two people who possess the legal capacity to contract actually make a contract, if the contract is not tainted with fraud and does not contravene public policy, it is the duty of a court of equity, if its powers are properly invoked for that purpose, to enforce the contract in accordance with its terms. A court of equity has, however, when its jurisdiction is invoked in cases like the present, the power to ascertain what was, in fact, the contract made by the parties, and to determine whether the writings truthfully express the actual agreement which they made.

Oral testimony will be resorted to for that purpose, and, while nothing which rests within the recollection of witnesses can be free from all doubt, the court will, so far as it can do so, get at the truth of the matter, and, having done that, if the court cannot say with reasonable satisfaction that the writings evidence a conditional conveyance of the fee and were not intended as a mortgage, then the court will always *lean* towards the theory that the writings were intended as a mortgage, "as that secures the interests of all parties and works a hardship to none."—*Irwin v. Coleman*, 173 Ala. 175, 55 South. 492.

The above rule declared in *Irwin v. Coleman, supra,* seems to apply only in cases where the controversy between the parties is whether the true contract as executed by the parties was a *conditional* sale of the lands or a mortgage. This rule does not seem to prevail in cases where the controversy is as to whether the deed was in fact an *unconditional* sale of the land or was only intended as a mortgage to secure a debt.

"To authorize the court to declare a deed *absolute* on its face to be a mortgage, it is not sufficient to raise merely a doubt whether the instrument speaks the intention of the parties. The court must be satisfied by at least a clear preponderance of the evidencce that a mortgage was intended and *clearly understood* by the *grantee* as well as by the grantor. This *severe* rule does not apply in cases where the *writings express a conditional sale,* or where it is *admitted* that there was a *contemporaneous agreement* different from that expressed in the instrument."—*Reeves v. Abercrombie,* 108 Ala. 535, 19 South. 41.

The above italics are ours, and the rule above declared authorizes this court to weigh the evidence in this case tending to show that a mortgage was intended by the parties in the light of the fact that, at the time the paper which purported to be an absolute conveyance of the land was executed and delivered, "there was a contemporaneous agreement different from that expressed in the instrument," and which contemporaneous agreement conclusively shows that the instrument was not, in truth, what it purported to be, viz., an absolute conveyance of a fee-simple title to the land. Such a contemporaneous agreement must "have an important bearing in weighing the parol evidence tending to show that the absolute conveyance was intended as a mortgage."—*Reeves v. Abercrombie, supra.*

(2) It appears from the evidence that Frank Allen is a man who can write his name, but that he is in fact uneducated. He owned the land in controversy for several years before the transaction which brought about this litigation, and during that period he appears to have built a house on it, and he was living in that house at the time he executed the papers. He seems, first, to have borrowed some money from George Trib-

ble, who is a brother-in-law of William Morton. Tribble, to secure the loan, took from Allen an absolute deed to the land and gave back to Allen a "lease sale contract." In other words, the papers evidencing the loan from Tribble to Allen were similar in all material respects to the papers now under consideration, and those papers, according to Tribble's own testimony, were, in fact, a mortgage. William Morton was on intimate social and business terms with Tribble, seems to have known of these papers, and that they were intended by the parties and were treated by them, as a mortgage. Morton, in fact, seems to have collected some of this indebtedness from Allen for Tribble, and he also appears to have become fully acquainted with Allen's land and to have formed friendly relations with Allen.

Finally Tribble notified Allen that he needed his money. Allen thereupon borrowed from a mortgage company $905 and paid Tribble all that he owed him. The debt to the mortgage company was evidenced by three notes, one for $305, due September 4, 1910; one for $300, due September 4, 1911; and one for $300, due September 4, 1912—all bearing interest from date at the rate of 8 per cent. per annum. When the first note matured, Allen *applied to Morton for a loan* with which to pay it. Allen claims that Morton consented to make the loan, and that the papers were executed and delivered to Morton as security for such loan, and that they were intended by both him and Morton to be a mortgage, and only a mortgage. Morton, on the other hand, claims that he told Allen that he could not and would not lend him the money, that the amount necessary to meet the debt of the mortgage company was too near the actual value of the property for him to make a loan upon it, that he was willing to buy the property from him and then lease it to him at $20 per month, and

that, if he would pay the rent and taxes promptly, then at the expiration of the lease he would deed the property back to him. Morton claims that Allen agreed to this, and that, with a full. and complete understanding of the entire transaction, Allen executed and delivered the papers.

There is much dispute among the witnesses as to the value of the land at the time of the above transaction. We are inclined to think that there was an increase in the value of the property after Allen delivered the papers to Morton; but we are convinced that, at the time of the transaction, the property was worth considerably more than $6.25 in cash and the mortgage for $905.

We therefore have, in this case, an alleged conditional sale of lands with the following facts existing: (1) The grantor is uneducated. The grantee is educated. The grantor appears to have had but little to do with the business world. The grantee appears to be a member of it. The grantor regards the grantee as his friend. The grantor had previously had a similar transaction with the brother-in-law of the grantee, and that transaction involved a *loan,* a fact known by the grantee. The papers now under consideration were prepared under the supervision of the grantee, and said papers are, in effect, duplicates of the papers which secured the above loan made by the brother-in-law. (2) The lands were worth considerably more than the consideration expressed in the conveyance and were in a section in which, according to all the testimony, the value of land was constantly increasing. (3) The transaction was the culmination of what was, admittedly, at first, a mere negotiation for a loan, and the loan was applied for because of the friendly relations existing between the parties. (4) For a *recited* cash

[Morton v. Allen.]

consideration of $6.25 and the assumption of a debt which was still, as between the grantor and the mortgage company, binding on the grantor, the grantee becomes the owner of what on the face of the conveyance appears to be the fee-simple title to the land, but which conveyance was not, according to the admitted facts, intended to operate as an unconditional conveyance of the fee. (5) The grantor remains in possession of the land, assesses it for taxes, and continues to exercise the same rights over it which he had previously done. (6) The grantor testifies that the papers were intended by both parties as a mortgage, and the grantee testifies that they were not so intended. (7) The "lease sale contract" provides for the payment by the grantor to the grantee of $1,035, a sum sufficient to meet the $905 mortgage held by the mortgage company on the property and the *interest* thereon.

The above being the situation, it is our duty—under the rule that a court of equity, in a contest over the question as to whether a given transaction constituted a conditional sale of land or a mortgage, to lean to the theory that the transaction was a mortgage—to declare that the deed was intended to be, and was in fact, a mortgage.—*Crews v. Threadgill,* 35 Ala. 334; 3 Pom. Eq. (3d Ed.) § 1195; *Rose v. Gandy,* 137 Ala. 330, 34 South. 239; *Abercrombie v. Reeves,* 108 Ala. 535, 19 South. 41; *Irwin v. Coleman, supra;* 1 Jones on Mortgages, § 328.

The above being our opinion, the decree of the court below is affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.