(75 South. 339)

VAN HEUVEL v. LONG.    (1 Div. 933.)

(Supreme Court of Alabama. April 26, 1917.)

1. MORTGAGES ⊜⇒38(2) — ABSOLUTE DEED — CONTEMPORANEOUS AGREEMENT—EVIDENCE.

Although, in order to authorize the court to declare a deed absolute on its face to be a mortgage, the burden is on the complainant to establish his bill by clear and convincing proof, this severe rule does not apply in cases where the writings express a conditional sale or where it is admitted that there was a contemporaneous agreement different from that expressed in the instrument.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 109.]

2. MORTGAGES ⊜⇒38(1) — ABSOLUTE DEED AS MORTGAGE—CONDITIONAL FEE—EVIDENCE.

In an action to have a deed absolute on its face declared a mortgage, where defendant admits that the deed was intended to convey a conditional fee and plaintiff claims that it was intended to be a mortgage, in case of doubt the court will favor a mortgage, as that secures the interest of all parties and works a hardship to none.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 108.]

3. MORTGAGES ⊜⇒38(1)—ABSOLUTE DEED AS MORTGAGE—EVIDENCE—SUFFICIENCY.

In an action to have a deed declared a mortgage and for an accounting and redemption, evidence *held* to sustain the finding of the trial court for plaintiff.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 108.]

4. MORTGAGES ⊜⇒226 — ABSOLUTE DEED AS MORTGAGE—BONA FIDE PURCHASER FROM GRANTEE.

Where a mortgagee holding a deed absolute on its face sold portions of the property to innocent purchasers, who received their deeds and were placed in possession, paying one-quarter of the purchase money, the balance being secured by a vendor's lien, and who made valuable improvements on the property, such purchasers are entitled to protection in a court of equity notwithstanding they had not at the time of trial paid the full purchase price.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 457, 611–617.]

5. MORTGAGES ⊜⇒226 — REMEDY OF MORTGAGOR AS AGAINST MORTGAGEE.

Where a mortgagee who had a deed absolute on its face conveyed the land to innocent purchasers for value, so that it was impossible to redeem the land, the mortgagee is responsible to the mortgagor for the value of the land conveyed, and not merely for the proceeds of the sale, and the mortgagor may claim the proceeds of the sale or the value of the land at his election.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 457, 611–617.]

6. MORTGAGES ⊜⇒617 — EVIDENCE — SUFFICIENCY.

Evidence *held* not to show that the mortgagee's efforts to sell the land worked any serious interference in the sale of the property by the mortgagor.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1845–1847.]

7. APPEAL AND ERROR ⊜⇒931(10) — REVIEW —PRESUMPTIONS.

The rule that the presumptions on appeal are in favor of the finding of a register on questions of fact, when the witnesses were orally examined before him, loses much of its force when the evidence was merely that concerning the opinion of the witnesses as to the value of property.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3728.]

8. EVIDENCE ⊜⇒601(4) — SUFFICIENCY—MARKET VALUE.

The valuation placed upon the property as its market value should not be greater than the largest amount shown to have been offered for it, where ample time was allowed for its sale, and it is clear that all persons in the community were aware it was for sale.

Appeal from Chancery Court, Clarke County; Thomas H. Smith, Chancellor.

Suit by Jessie Long against M. Van Heuvel. From a decree for plaintiff, defendant appeals. Affirmed in part, and in part reversed and remanded.

The bill of complaint in this case is filed by Jessie Long (appellee), the grantor in a conveyance of lands absolute on its face, against the grantee, Martin Van Heuvel (appellant), and ten parties to each of whom Van Heuvel sold portions of said lands. The complainant seeks to have the conveyance declared in reality a mortgage and prays that she be permitted to redeem thereunder.

The bill which was filed on April 3, 1912, alleges that on January 24, 1907, the complainant (appellee) Jessie Long and her husband, T. A. Long, to secure a debt of $3,800, executed to the respondent (appellant) Van Heuvel a mortgage on the northwest quarter and west half of the northeast quarter of section 9, township 9, range 1 west, and lot 6 and the north half of lot 5 in the town of Coffeeville, all in Clarke county, Ala.; that at the same time they gave Van Heuvel their

promissory note evidencing said debt, which note was payable July 23, 1907; that after the maturity of this note Van Heuvel requested payment thereof, but, as complainant was "financially unable to pay the same," T. A. Long, acting as his wife's agent, requested an extension of time for the payment of said debt; that on December 1, 1908, Van Heuvel agreed to extend the maturity of said debt for 13 months from that date provided complainant and her husband should execute a "conveyance in the form of a deed" to said property reciting as a consideration the amount of the debt—then $4,256. The bill avers that it was agreed that complainant should have 13 months to pay said debt with accrued interest and taxes and to "redeem" said property; that Van Heuvel agreed to execute a bond to complainants in the sum of $10,000 conditioned to reconvey the land upon payment of the debt with interest and taxes within the said period of 13 months; that the deed and blank bond were delivered to Van Heuvel, who kept, and on March 15, 1909, placed on record, the deed, but failed to sign and return to complainant the bond. The bill further avers that it was agreed that complainant should have the right to obtain purchasers for any portion of the land in order to secure money to assist in paying off the "mortgage indebtedness," but that in November, 1909, Van Heuvel "went upon the property, platted or subdivided same, asserted title thereto," and thus induced parties to believe the land was his, thereby preventing complainant from making any sales of said land; that on November 16, 1911, Van Heuvel deeded portions of this property to the respondents Johnson, Wilson, and Gilmore, part of the consideration being paid in cash, and the balance secured by vendor's liens, to be paid in future, and also, according to complainant's information and belief, deeded other portions of the property to the other respondents, Coate, Benson, S. W. and W. P. Woodham, Cox, and Carl. Each of said purchasers from Van Heuvel, complainant charges, had notice of complainant's claim to the ownership of the property, subject to the "mortgage interest of Van Heuvel."

Complainant offers to pay Van Heuvel the amount of her indebtedness to him and such other sums as the court should decree to be due him. She prays that the instrument of December 1, 1908, be decreed a mortgage; that she be permitted to redeem thereunder; that an accounting be had as between complainant and respondent, and also a prayer for general relief; and that the deeds from Van Heuvel to the other respondents be canceled as clouds upon complainant's title. Copies of the mortgage of January 24, 1907, and the deed of December 1, 1908, are attached to and made parts of the bill.

Respondents filed their answer to the bill of February 26, 1913. All the respondents, other than Van Heuvel, deny that they had any knowledge or notice of the complainant's claim to any interest in the land before they purchased portions thereof from Van Heuvel, and allege that since their purchase and before learning of complainant's claim they had put improvements on their respective tracts, aggregating in value $2,000.

The respondent (appellant) Van Heuvel in his answer to the bill admits that T. A. Long, acting as agent for Jessie Long (appellee), requested an extension of time for the payment of the debt secured by the mortgage which matured July 23, 1907, but expressly denies that he agreed to this request. He alleges that, on the contrary, having previously made several extensions, he declined to extend further; that on December 1, 1908, it was agreed between himself and T. A. Long, as agent for his wife, the complainant, that complainant and her husband should execute to him (Van Heuvel) a deed conveying the lands covered by the mortgage, and that the complainant (appellee) should have one year, or until December 1, 1909, in which to repurchase said land from him. The answer of Van Heuvel admits that he agreed to execute a bond for title and alleges that he did so and mailed the same to complainant at Jackson, retaining a copy thereof himself.

The respondent's (appellant's) answer further alleges that there was no obligation on the part of complainant (appellee) to repurchase the lands, though she had the privilege of doing so at any time within the twelve months; that the deed was executed by her in lieu of a foreclosure of the mortgage, and was made at the instance of complainant in order that she might have an opportunity to sell the property and have the benefit of any excess over the amount for which he had agreed to reconvey the same; that the whole transaction of December 1, 1908, constituted a conditional sale, or a sale with the right on the part of complainant (appellee) to repurchase; that he (Van Heuvel) had in no wise interfered with complainant's right to arrange a sale of the property, but on the contrary was willing and anxious that complainant should make a sale so that he might get out of the land the amount agreed on within the 12 months.

The respondent Van Heuvel further denies that he verbally agreed that complainant should have the right to sell in small parcels or lots so much of the land as it might be necessary to sell to raise enough to pay him the amount agreed upon. He further denies that he interfered in any way with complainant's right to repurchase the lands during the period through which that right continued.

Upon submission of the case after taking the testimony of 14 witnesses for the complainant and a like number for respondents, the chancellor rendered a decree holding the conveyance of December 1, 1908, to be a mortgage and granting the relief sought by com-

plainant. The decree reads, in part, as follows:

"The subpurchasers from Van Heuvel were innocent purchasers for value. The measure of relief, then, is difference between value of the land on the date the bill of complaint was filed and the then amount of the debt. Defendant having placed it beyond his power to restore to complainant the land, having sold it for more than enough to pay the debt, no tender or payment by complainant is required, but only an accounting between the parties. * * * The defendant is entitled to interest to the date the bill was filed on the amount named in the conveyance as purchase price, to all taxes paid by him to that date, and is liable for rents collected and value of the property at the time the bill was filed."

The decree concluded by referring to the register the stating of the account between complainant and defendant Van Heuvel, and ordered the register to. ascertain and report the value of the property at the time the bill was filed.

On this reference 18 witnesses testified as to the value of the land involved in this suit. Their testimony is absolutely irreconcilable. The values they set upon the land varied from $10 per acre to $50 per acre. The register reported $35 as the average value per acre of the property, and stated the account, as shown at page 190 of the record, as follows:

| | | |
|---|---|---|
| To value of property on April 3, 1912, at $35 per acre for 249 acres | $8,715.00 | |
| Rents collected by Mr. Van Heuvel | 166.00 | |
| | | $8,881.00 |
| To amount of debt due Mr. Van Heuvel (appellant) on December 1, 1909 | $4,256.00 | |
| Interest at 8% to April 3, 1912.. | 767.00 | |
| Taxes paid by Mr. Van Heuvel | 96.00 | |
| | | 5,119.50 |
| Difference due Mrs. Long (appellee) | | $3,761.50 |

The chancellor overruled the defendant's exceptions to the report of the register, and ratified and confirmed the same, and decreed:

"That the defendant M. Van Heuvel is indebted to complainant in the sum of $3,761.50; and that complainant have and recover of him this sum, together with the costs of this cause, for which execution may issue against him."

Stevens, McCorvey & McLeod, of Mobile, and Q. W. Tucker, of Grove Hill, for appellant.· John E. Mitchell, of Mobile, for appellee.

GARDNER, J. This bill was filed by the appellee against the appellant for the purpose of having the deed of December 1, 1908, declared a mortgage, and for an accounting and redemption.

On January 24, 1907, the complainant and her husband executed to the respondent (appellant here) a mortgage on a certain 249 acres of land situated in Clarke county, Ala., to secure a debt of $3,800, at the same time executing their promissory note evidencing said debt, payable July 23, 1907. After the maturity of the note, respondent requested payment, but complainant was financially unable to pay

same, and asked for an extension of the debt. The negotiations of the parties resulted in the deed of December 1, 1908, here sought to be declared a mortgage. The complainant insists that the deed was given as a mere security for the debt, and an extension of the payment thereof as agreed by the respondent for another year, and that at the same time the respondent agreed to execute a bond to complainant, conditioned to reconvey the land upon payment of the debt with interest, and taxes within said time,· within which complainant was to redeem the same. The respondent admits that there was a contemporaneous agreement under which complainant was to have until December 1, 1909, in which to repurchase the land, and that he agreed to execute a bond for title, which, he insists, he did, and that the whole transaction of December, 1, 1908, constituted a conditional sale, or a sale with the right on the part of complainant to repurchase, and that the deed was executed merely in lieu of the foreclosure of the mortgage.

[1] It is well understood that, as a general rule, to authorize the court to declare a deed absolute on its face to be a mortgage, it is not sufficient to raise merely a doubt whether the instrument speaks the intention of the parties; but the burden is upon the complainant to establish his bill by "clear and convincing" proof. Reeves v. Abercrombie,\ 108 Ala. 535, 19 South. 41. It is, however, as equally well established that:

"This severe rule does not apply in cases where the writings express a conditional sale, or where it is admitted that there was a contemporaneous agreement different from that expressed in the instrument. * * * Such a contemporaneous agreement must 'have, an important bearing in weighing the parol evidence tending to show that the absolute conveyance was intended as a mortgage.'" Morton v. Allen, 180 Ala. 279, 60 South. 866, L. R. A. 1916B, 11.

[2] "It has been universally held that, as between a conditional fee and a mortgage, in cases of doubt the court will always lean towards the mortgage, as that secures the interest of all parties and works a hardship to none." Irwin v. Coleman, 173 Ala. 175, 55 South. 492; Morton v. Allen, supra; Nelson v. Wadsworth, 181 Ala. 361, 61 South. 895. It is admitted in the answer of respondent that the transaction of December 1, 1908, constituted a conditional sale, and therefore the rule last above referred to is applicable here. It is without dispute that the recited consideration of the deed of December 1, 1908, was the exact amount due by the complainant to the respondent on that date, to wit, the sum of $4,256, and the bond for title executed by the respondent stipulated for the reconveyance of said property to complainant, in consideration of the payment of the "sum of $4,256, with interest from January 1, 1909, payable December 1, 1909."

It is further admitted by the respondent that at the time of the execution of this deed he had in his possession the note and

mortgage evidencing the indebtedness of complainant to himself, and that he did not surrender the same, nor cancel the mortgage of record, but has the said note and mortgage still in his possession. This has been held to be strong evidence that the debt was not extinguished, and that a mere security was intended. 1 Jones on Mortgages, vol. 1, § 326, and note.

It further appears from the evidence that respondent did not collect the rents due upon the land for the year succeeding the date of the execution of the deed, but that the same was collected by the complainant. The amount of the indebtedness, as heretofore stated, was $4,256. The property was sold by the respondent for the sum of $5,780. The register reports its value as $8,715, while we conclude that its market value was $6,500. The question of disparity between the purchase price and the value of the property is to be accorded consideration. Turner v. Wilkinson, 72 Ala. 361.

Considerable correspondence passed between the parties subsequent to the execution of the deed. On December 18, 1908, which, it will be noted, is but 18 days after the deed was executed, respondent wrote:

"Please let me know how you are progressing in securing the necessary amount to take up your note."

In other letters he used such expressions as:

"I would be reducing my security * * * after your time to redeem it. * * * I would like very much to get my money. This loan has given me much thought and worry. * * * If you will send me $1,000.00 immediately, I will hold the land until January 1st, charging you 8 per cent. interest on the balance, but under no circumstances will I carry you longer on this loan."

It is quite clear from the record that the respondent did not consider the land worth any more than the security, if that much, and that he was more anxious to realize the money than to secure the property. Witnesses testify that respondent stated to them that he had given complainant a year to raise the money that was due him and redeem the land, and that if complainant did not pay him, "and he got the land," it would be for sale, and that he would sell it for the amount that he had in it, "principal and interest."

[3] We do not consider, however, that a further discussion of the evidence would serve any good purpose, but content ourselves with thus referring to some of the salient features of the case. Suffice it to say that, upon a most careful consideration thereof, we are unwilling to disturb the conclusion of the court below in declaring the deed a mortgage.

In November, 1911, the respondent sold separate portions of this property to six different persons, who are made parties respondent to the cause. They received their deeds, were placed in possession, paying one-fourth of the purchase money; the balance being secured by the vendor's lien. These several purchasers have made valuable improvements on the property, amounting in the aggregate, according to the evidence, to the sum of $2,600. The chancellor concluded that these parties were innocent purchasers, and were to be protected in a court of equity. He therefore ordered an accounting to be had by the complainant and the respondent Van Heuvel, in which said respondent was to be charged with the market value of the property, and the rents collected and credited with the debt and interest and taxes paid.

[4] We are of the opinion that the court was correct in holding that these purchasers, under the circumstances here disclosed, were entitled to protection in a court of equity, notwithstanding they had not, at that time, paid in full the purchase price. Freeman v. Pullen, 130 Ala. 653, 31 South. 451.

[5] It has been held that in cases of this character the mortgagee is responsible to the mortgagor for the value of the land conveyed, and not merely for the proceeds of the sale, and that the mortgagor may claim the proceeds of the sale, or the value of the land at his election. 1 Jones on Mortgages, vol. 1, § 341; Enos v. Sutherland, 11 Mich. 538; Wilson v. Drumrite, 24 Mo. 304; Bissell v. Bozman, 17 N. C. 229; Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799.

We approve the holding of these authorities and think that the chancellor was correct in so directing upon the accounting had. There but remains one question of fact for determination, and that is as to the value of the property. As previously stated, the register fixed the value of this 249 acres at the sum of $8,715. It is not contended that the property is of such value merely for farming purposes, but much stress is laid by the witnesses in their opinion upon the fact that much of the land is situated within a short distance of the business portion of Coffeeville, and suitable to be divided up into lots for residence purposes as well as small truck farms.

The record fails to disclose the population of the community of Coffeeville, and nothing to indicate that same is incorporated; nor do any of the census reports inform us anything in regard thereto. The evidence is about equally balanced so far as the number of witnesses examined as to the valuation of this property. It consists wholly of opinion evidence, and, as is to be expected in cases of this character, is in irreconcilable conflict.

In Thornton v. Pinckard, 157 Ala. 206, 47 South. 289, speaking of the subject of the valuation of property, this court said:

"Testimony as to the value of the property, such as that involved in this controversy, is in its nature opinion evidence. 'There is, perhaps, no subject on which witnesses differ more widely.' * * * In this case the witnesses differ in their estimates of the value. Perhaps there is no better test of the real value of real estate than to put it on the market and seek purchas-

ers for it. Property is usually worth what it brings."

At the time when the deed of December 1, 1908, was executed, it was agreed between the parties that the complainant (who acted through her husband as her agent) was to make an effort to get purchasers for this property, and such sum as could be secured in excess of the amount of indebtedness should inure to her benefit. Complainant's husband did make an effort, but failed to secure a purchaser. Afterwards, respondent, through his agent, one May, also made efforts to sell the property to the best advantage, and finally in November, 1911, the respondent found purchasers, in the amount and on the terms previously stated.

The complainant insists that the respondent's efforts to sell interfered with hers, and created some confusion in the minds of prospective purchasers.

[6] Upon a careful consideration of the evidence, however, we are not persuaded that this worked any serious interference with a sale of the property.

One McCorquodale, testifying in the cause, stated that he had known for a long number of years the market value of this land, and that he had, in 1908, offered the sum of $6,500 for the property as a whole. This appears to be the highest offer that was ever made for the property, and yet this witness declined to buy portion of this land when subsequently approached by the respondent.

[7] We recognize that complainant places upon this property a very high valuation, and several witnesses in that community lend their opinion in support of his. We also recognize the well-established rule in regard to the presumptions in favor of the finding of the register on questions of fact when the witnesses are orally examined before him. Anniston L. & T. Co. v. Ward & Co. et al., 108 Ala. 85, 18 South. 937; Jones v. White, 112 Ala. 449, 20 South. 527.

The reasoning of the rule rests, of course, on the fact that the register had the witnesses before him, and could note the demeanor on the stand, and therefore had better opportunity in the ascertainment of the truth. This rule, of course, must lose much of its force when the evidence was merely that concerning the opinions of the witnesses as to the valuation of the property. It has been frequently stated property is usually worth what it brings on the market. Here, ample opportunity was given to secure purchasers, and we think it quite clear that all interested parties in that community were aware of the fact that property was for sale.

[8] We are therefore convinced that the valuation placed thereon by the register was too high, and that the sum to be fixed should not be greater than $6,500, the largest amount shown to have been offered therefor.

We therefore conclude that the exceptions to that portion of the register's report as to the valuation of the property should have been sustained, and to that extent the decree will be reversed, and one here entered inserting in the report of the register the valuation of $6,500, in lieu of $8,715, and the amount of the indebtedness to the complainant accordingly reduced to the sum of $1,546, in lieu of $3,761.50, as confirmed by the chancellor.

As thus corrected, the decree of the chancellor will be affirmed.

Affirmed in part, and in part reversed and remanded.