# Jones *v.* Kennedy, Admr. &c.

### *Bill in Equity to enforce Equitable Lien.*

1. *Equitable mortgage; when not shown by recitals of promissory note.*—A promissory note which recites that on a certain day the maker promises to pay to a certain person "six hundred dollars with interest from date for the purchase price of the following described land," describing certain land, is not in terms a mortgage on lands to secure the payment of the sum specified, nor does it purport to create or to declare any liens upon lands to that end. And whether or not the execution of such note created an equitable mortgage is dependent upon the intention of the parties thereto; and the burden is upon the promisee of said note to show that it was the intention of the parties to fix an equitable mortgage on the lands to secure the repayment to him of the money paid.

APPEAL from the Chancery Court of Chambers.

Heard before the Hon. RICHARD B. KELLY.

The bill in this case was filed by the appellee, T. L. Kennedy, as administrator *de bonis non* with the will annexed, of the estate of F. C. McElvy, against the appellants, Sarah A. Jones and W. F. Jones.

In the bill as amended, the following facts were averred: On December 6, 1893, Sarah A. Jones and W. F. Jones executed to F. C. McElvy a promissory note of six hundred dollars, which was in words and figures as follows: "LaFayette, Ala., Dec. 6th, 1893. On or by the 6th day of December next, we or either of us promise to pay F. C. McElvy or bearer six hundred dollars with interest from date for the purchase money of the following described lands, to-wit:" There then follows a description of the lands. The six hundred dollars for which said note was given by defendants to McElvy was money loaned to them for the purpose of buying the land described in said note. Sarah A. Jones was the daughter of F. C. McElvy and he desired to assist her in buying said land, and, therefore, loaned the money as above stated.

The money for which the note was executed was paid to Robert T. Humphrey, and said Humphrey and his wife executed and delivered to Sarah A. Jones a deed conveying the land that was described in said note. Neither the six hundred dollars nor any part thereof has ever been paid. The complainant then averred in the bill that in giving the note the defendants agreed that said F. C. McElvy have a lien on the described land to secure the payment of the six hundred dollars and interest, and the defendants intended and agreed, by executing said note, to create an equitable or other lien in favor of F. C. McElvy on said described lands to secure to him the payment of the six hundred dollars loaned to Sarah A. Jones.

The prayer of the bill was that it be decreed that said writing in the note was an equitable lien or mortgage to secure the payment of the amount of said note, and that said lien be enforced. There was also a prayer for general relief.

The defendants filed a joint answer in which they admitted receiving from F. C. McElvy the sum of six hundred dollars and the execution of the promissory note described in the bill. But the defendants averred in their said answer that the six hundred dollars for which the note was given was not loaned by F. C. Mc-

Elvy to them for the purpose of buying the land described in said note, nor was it the intention of McElvy to assist Sarah A. Jones in buying said land by lending her said money, but the said six hundred dollars, which was used in the purchase of said lands, was given to Sarah A. Jones by F. C. McElvy, her father, and it was never the intention of said McElvy that she should repay said money to him. That the six hundred dollars was a *bona fide* gift from McElvy to Sarah A. Jones; that the money was sent by William McElvy her brother, who upon delivering the money, asked the respondents to sign the note set out in the bill, telling them at the time that said note was not to be paid, but was to be given as evidence of the fact that Sarah A. Jones had received from the estate of her father that much money; that William McElvy had no authority from his father, F. C. McElvy, to take the note, and that F. C. McElvy executed or intended that such note should be collected. Under the opinion on the present appeal, it is unnecessary to set out the evidence in detail.

On the final submisison of the cause on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for and so ordered. From this decree the respondents appeal, and assign the rendition thereof as error.

J. J. ROBINSON, for appellants.

T. L. KENNEDY, for appellee.

MCCLELLAN, C. J.—In no possible view of this case upon the evidence did F. C. McElvy, deceased, have a vendor's lien upon the land in question; nor did any trust thereon result in his favor.—*Chapman v. Abraham*, 61 Ala. 108.

The paper signed by Mrs. Jones and her husband importing a promise on their part to pay six hundred dollars to F. C. McElvy, "for the purchase of the following described lands," describing the lands involved here,

[Jones v. Kennedy, Admr. etc.]

is not in terms a mortgage on the lands to secure the payment of that sum, nor does it purport to create or to declare any lien upon the lands to that end. There being no vendor's lien nor resulting trust, if any lien securing the payment of the money advanced by F. C. McElvy to Mrs. Jones to pay the purchase price of the lands to Humphrey came into existence at all, it was that of an equitable mortgage, and it was upon the complainant to prove the existence of such mortgage in favor of his testator. This issue turns upon a conclusion as to the *intention* of the parties. The inquiry is not foreclosed by the writing signed by Mrs. Jones, even assuming that it was delivered to F. C. McElvy and its execution thereby perfected. The most that can be said of it is that it affords some grounds for an inference that the parties intended this money to be a charge on the lands. There is no *expression* in the paper of such intention. On the other hand its reference to the money as being "for the purchase" of certain lands may have been inserted as a mere statement and identification, so to say, of the consideration for the promise to pay. Its terms are by no means conclusive upon the inquiry; and to show that the parties never intended to charge the lands, thereby rebutting whatever inference might be deducible from the writing of it affords any inference, would not be to vary or contradict the instrument. The writing, in other words, is such as the parties might well have made if they intended to charge the land, but on the other hand, it is also such as they might well have made without any such intention. This is the most that can be said of it favorably to the contention of the complainant. And thus interpreted and understood, the question of intent is still at large and soluble upon evidence *aliunde*. Such evidence has been adduced in the case, and upon a careful consideration of it, we are satisfied that neither Mrs. Jones nor F. C. McElvy had any intention of fixing a lien on the lands to secure the repayment to the latter of the money he paid to Humphrey for the conveyance by the latter to Mrs. Jones.

[The State v. Crenshaw.]

The decree granting the relief prayed must, therefore, be reversed, and a decree will be here entered denying relief and dismissing the bill.

Reversed and rendered.