WRIGHT *et al. v.* ILLINOIS CENT. R. CO.

(In Banc. Jan. 24, 1944. Suggestion of Error Overruled Feb. 14, 1944.)

[16 So. (2d) 381. No. 35534.]

S. C. Mims, of Grenada, for appellants.

152

Cowles Horton, of Grenada, and Lucius E. Burch, Jr., of Memphis, Tenn., for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellants brought this action in the circuit court of Grenada County against the appellee, the Illinois Central Railroad Company, to recover damages for the death of six head of cattle. owned by them, alleged to have been negligently killed by means of poison put out by the railroad company. There were two trials. On the first the court directed a verdict and judgment against the railroad company. From that judgment the railroad company appealed, resulting in a judgment of reversal by this court, and a remand of the case for another trial. The court held that it was not a case for a directed verdict, but an issue of fact for the jury. Illinois Cent. R. Co. v. W. N. Wright and D. D. Smith (Miss.), 11 So. (2d) 312. Counsel for the respective parties agree that the evidence on the second trial was substantially the same as that on the first trial. The only error assigned and argued was the giving of four instructions for the railroad company, each so emphasizing the requirement that the case should be made out by "witnesses" as to unduly exclude from the consideration of the jury reasonable inferences to be drawn from the testimony of witnesses.

The testimony was without any substantial conflict. The appellants were engaged in the cattle business. In

connection therewith they owned an enclosed pasture of about 300 acres of land. The enclosure was by means of a fence, and on the railroad side of the pasture this fence was on the line between it and the railroad right of way. The railroad company destroyed the grass, weeds and other growth on its right of way, by spraying a poison on it. This was done on Friday of one week. On Wednesday of the next week six of appellants' cattle were found dead in their pasture. It had rained on Sunday before they were found. They were poisoned with arsenic. There was no evidence as to what poison the railroad company used in spraying its right of way. Three of the cattle were found "near a puddle of water close to the fence on the railroad right of way." Three were found about 300 yards out in the pasture, away from the puddle of water. Appellants' case is that arsenic was used in spraying the right of way, which was washed into the puddle by Sunday's rain, from which the six head of cattle drank, resulting in their death.

The giving of the four instructions complained of simply told the jury that the appellants had to make out their case by the testimony of witnesses, and that the word "witnesses" was thereby so emphasized as to exclude from the jury the consideration of reasonable inferences from their testimony. Along with those instructions the appellants got one in which this language was used: "The Court instructs the jury for the plaintiffs that if you believe from the preponderance of the evidence, direct or circumstantial evidence, and the reasonable inference to be drawn therefrom, that the defendant acting through its servants," etc. Considering that instruction along with the four in question, the jury could not have been misled. As reasonable men, they knew the court did not confine them to the testimony of eyewitnesses as to every material effect.

Appellants made a motion for a new trial, which was overruled. One of the grounds was that "the verdict of the jury was contrary to the evidence produced in the

case." That ground is neither assigned nor argued as error. But if it had been, it is without merit. The question before the jury was whether or not the railroad company, in poisoning the growth on its right of way, should have reasonably anticipated injury to the appellants' property. That principle is supported by numerous decisions of our court. We deem it only necessary to quote from the recent case of Mauney v. Gulf Refining Co., 193 Miss. 421, 8 So. (2d) 249, 9 So. (2d) 780, 781; "The settled law in this state may be summarized in the form of a diagram, as follows: The area in which liability is imposed is that which is within the circle of reasonable foreseeability using the original point at which the negligent act was committed or became operative, and thence looking in every direction as the semidiameters of the circle, and those injuries from which this point could or should have been reasonably foreseen as something likely to happen, are within the field of liability, while those which, although foreseeable, were foreseeable only as remote possibilities, those only slightly probable, are beyond and not within the circle—in all of which time, place and circumstance play their respective and important parts."

Ordinarily this court would not raise a question not assigned and argued as error. We depart from that rule in this case because two members of the court think it ought to be done. It is permissible under Rule 6 of the Court (161 Miss. 903, 904, Revised Rules of the Supreme Court of Mississippi), which provides, among other things, that the court "may at its option notice a plain error not assigned or distinctly specified."

From what has been written it is apparent to the majority of the court that there is ample evidence to justify the jury in finding that the railroad company could not have reasonably foreseen injury to appellants' property, including their cattle. Affirmed.

DISSENTING OPINION.

**Griffith, J.**, delivered a dissenting opinion.

Appellants, plaintiffs in the court below, are in the cattle business, and at the time in question had a three-hundred acre pasture immediately adjacent to the railroad right of way, the fence line running along the right of way. In this pasture appellants had forty or fifty head of cattle. The railroad was located upon an embankment at this point and the right of way was higher than the adjoining pasture, so that the rain water falling on the right of way there would and did run off onto the pasture and into a small pool located inside the pasture fence, but near the railroad right of way.

On a Friday in June the railroad company sprayed its right of way and embankment opposite this pool with a poisonous liquid sometimes called a weed killer, the purpose being, according to the section foreman, to promote the drainage of the right of way by killing the grass and weeds thereon. It rained on the Sunday next thereafter, and one of the witnesses, who is not disputed, said that it rained on another day in the same week. On the following Tuesday or Wednesday six head of plaintiffs' cattle were found dead, three of them at the pool. Appellants called the county agent and a veterinarian, and the appearance of the dead animals being such as to suggest poisoning, a part of the stomach of one of them was taken, and also some of the contents of the pool and some of the grass along the course of the rain water from the right of way to the pool; and these were carefully sealed and sent to the state chemist. The state chemist testified, without contradiction, that the three materials sent him each contained arsenic in a sufficient quantity to be likely to produce the death of cattle. Plaintiffs, by their evidence, showed that they had put out no poison in the vicinity, and there is no sort of suggestion in the record that it could have come from anywhere except

from the poisonous substance used on the right of way. All the above facts are undisputed; nevertheless the jury returned a verdict for the railroad company, and the majority of this court are affirming the verdict on the ground that "there is ample evidence to justify the jury in finding that the railroad company could not have reasonably foreseen injury to appellants' property, including their cattle."

What is it here that the railroad could not have reasonably foreseen as something likely to happen? We start out with the admission by the railroad company that it was using a poisonous substance powerful enough to kill grass and weeds. This is enough to pose the proposition that what was being used was a dangerous chemical, and nothing is better settled than the rule of law that one who in the conduct of his business uses such a chemical is bound to know the nature of the constituents and general characteristics of the substance so used. American Sand & Gravel Co. v. Reeves, 168 Miss. 608, 151 So. 477. The railroad company could reasonably forsee that rain was likely to fall, an anticipation against which care is taken every hour in nearly every week of life, especially where rainfalls are frequent, as is the case in this geographical territory. The railroad company could foresee that rain water, when it fell on the higher ground of its right of way, would run downwards upon the lower ground of this pasture and across to this pool, located nearby—as it did do according to the undisputed evidence. As already mentioned, the very purpose of the spraying of the poison was to aid drainage from the railroad right of way. The poison being sprayed so that it fell loosely upon the grass and weeds and some of it on the ground, the railroad company could reasonably have foreseen that the rain and the rain water would gather some of the poison and carry it along as it drained onto the adjoining pasture. The railroad company could reasonably have foreseen that the cattle in the pasture would eat of the grass along which the rain water drainage ran and drink of the pool

into which that water emptied; and it is undisputed that the grass and the water contained arsenic, sufficient to be likely to kill cattle, and it is undisputed that the stomach of one of the dead cattle did contain arsenic of that amount.

The question is, therefore, again put: What then was there here anywhere that the railroad company could not have reasonably foreseen as something likely to happen, and all this according to the usual course of the very nature of the situation involved? Arsenic is one of the most persistent, as well as one of the most deadly of poisons, one of its known characteristics being that its potency survives far beyond any such period as when the next rain shall come, and, as stated, the facts are undisputed,—the railroad company introduced no testimony, and there is not a word of evidence by way of avoidance of what was shown by appellants. Where, then, is the ample evidence, of which in general terms the majority speaks, to justify the jury in their verdict for the railroad company? There is not only an absence of ample testimony to that effect, but an absence of any whatever. The verdict is contrary to every reasonable probability and represents a gross miscarriage of justice, which it is the constitutional duty of this court to correct.

This state is now seeking to encourage and promote the raising of cattle and of a better class of cattle, but here is an announcement by a majority of the state's highest court that a railroad company operating hundreds of miles of railroad in the state, may spray its rights of way alongside cattle pastures with arsenic poison and allow the drain of this poison to flow into the adjoining pastures, killing the cattle there and yet not be liable. Fortunately, few juries will accept such a view, and hope may be taken in the doubt that the bench and bar will subscribe to it.

McGehee, J., also dissenting.