16 So.2d 881

**BROCK v. BROCK.**

**5 Div. 386.**

Supreme Court of Alabama.

March 2, 1944.

D. W. Jackson, of LaFayette, for appellant.

C. E. Fuller, Jr., of LaFayette, for appellee.

LIVINGSTON, Justice.

Suit by Clemmie Brock against Charlie Brock, to declare a deed a mortgage, to redeem and for general relief. The respondent made his answer a cross-bill, and prays that the court will make and enter a decree declaring the transactions between the parties to be a conditional sale, and under which cross-respondent, Clemmie Brock, has lost all rights in and to the property involved, and for general relief. Decree denying relief to complainant, and granting relief to respondent and cross-complainant, in accordance with the prayer of the cross-bill. Complainant appealed.

. Prior to 1917, Bob Brock died, and by will left a large farm in Chambers County, Alabama, to his children. By agreement, the farm property was divided in kind among the joint owners thereof. One of the sons of Bob Brock, deceased, i. e., Julius Brock, Sr., being dead or missing, his moiety, the lands here involved consisting of ninety-eight and one-half acres, was conveyed by deed dated September 22, 1917, to his sons, Clemmie Brock, Bedell Brock and Julius Brock, Jr. These three sons of Julius Brock, Sr., were all minors at the

time the land was conveyed to them, and on November 16, 1920, Charlie Brock, the respondent and cross-complainant, an uncle of said minors, was appointed their guardian. Charlie Brock made a settlement of said guardianship on September 28, 1929. About the middle of June 1931, the lands involved were sold at a tax sale to D. W. Jackson to satisfy the unpaid taxes for the year 1930. Two days before the expiration of the time provided by statute for redeeming the lands from the tax sale, Charlie Brock notified Clemmie Brock and Julius Brock, Jr., who were then living in Birmingham, Alabama,—Bedell Brock having died in 1930,—that they were about to lose their land, and advised them to come to Chambers County to see about it. Using a freight train as an instrumentality of travel, Clemmie and Julius immediately proceeded to Opelika, Alabama, and from there to the home of Charlie Brock in Chambers County, where the transactions culminating in this lawsuit transpired.

Concerning some of the things said and done, the evidence is in conflict, but it is undisputed that Charlie Brock agreed to and did advance the sum of $109.84 for the purpose of redeeming the land. Clemmie and Julius, Jr., executed and delivered a deed, absolute in form, conveying the lands involved to Charlie Brock. Though the deed did not convey the interest of the heirs of Bedell Brock, deceased, that interest, as well as the interest of Julius Brock, Jr., was later acquired by Clemmie Brock. Simultaneously with the execution and delivery of the deed, the parties entered into a written agreement in words and figures as follows:

"State of Alabama.
"Chambers County.
"Know all men by these presents, That it is hereby agreed by and between, Clemmie Brock and Julius Brock, parties of the first part, and Charlie Brock, party of the second part as follows, to-wit:
"That the said parties of the first part have this day deeded to Charlie Brock the following described real estate, to-wit:
"98½ acres in the south half of section 17, Township 21, Range 26, situated in Chambers County, Alabama, and bounded as follows: On the north by lands of Charlie Brock, on the east by Charlie Brock and Judie Huguley, on the south by Addie Shealey and Isah Brock, and on the west by Sam Brock.

"The consideration for said deed being the sum of $109.84, and being money due the said Charlie Brock for money advanced for the redemption of said land from tax sale, money advanced in cash, and expenses, etc.
"The purpose of making said deed is to secure the party of the second part for said sum of money advanced for us.
"It is agreed by party of the second part that the said parties of the first part shall have the privilege of paying back said money to party of the second part, his heirs or assigns, with interest at the rate of eight percent. from this date, and when said sum of money with the interest is paid, then party of the second part hereby agrees to re-convey said above described lands back to the said party of the first part, said redemption right of the parties of the first part shall extend two years from this date.
"It is further agreed that should Charlie Brock, pay to us any additional sum of money during the next two years, then such sum or sums shall be covered in this agreement as fully as if included in said amount. Witness our hands and seals in duplicate this 13th day of June, 1933.
                                          his
                          "Clemmie x Brock   L.S.
                                        mark
"Witness:            Julius Brock         L.S.
                        (parties of the first part).
"Chas. E. Fuller
"Chas. E. Fuller, Jr. Charlie Brock
                        (party of the second part.)"

The two papers having been executed at one and the same time, and the written agreement referring to the conveyance of the said land, will be construed together. Smith et al. v. Smith et al., 153 Ala. 504, 45 So. 168, 169.

The evidence discloses that Charlie Brock is a man of intelligence and some means, owning approximately six hundred acres of farm lands in Chambers County; while, on the other hand, Clemmie, who is unable to read or write, and Julius, Jr., were practically destitute at the time of the execution and delivery of the deed to their uncle and former guardian, and under the circumstances revealed by the evidence were faced with the alternative of losing their land or following the course taken by them. Though the evidence touching the question is in conflict, we are fully persuaded that the value of the lands was far in excess of the amount advanced by Charlie Brock.

This court in the case of Irwin v. Coleman, 173 Ala. 175, 55 So. 492, 494, said:

" 'Although it is difficult to establish fixed rules by which to determine whether a particular transaction is a mortgage or a conditional sale, there are some facts which are regarded as of controlling importance in determining the question. Did the relation of debtor and creditor exist, before and at the time of the transaction? Or, if not, did the transaction commence in a negotiation for a loan of money? Was there great disparity between the value of the property and the consideration passing for it? Is there a debt continuing, for the payment of which the vendor is liable? If any one of these facts is found to exist, in a doubtful case it will go far to show a mortgage was intended. If all of them are found concurring, the transaction will be regarded as a mortgage rather than a conditional sale, unless the purchaser, by clear and convincing evidence, removes the presumption arising from them.' Turner v. Wilkinson, 72 Ala. 361, 366; Winn et al. v. Fitzwater et al., 151 Ala. 171, 178, 44 So. 97. See, also, 3 Pomeroy Eq. Jur. (3d Ed.) 1195."

We quote the following applicable statement from the case of Abercrombie v. Carpenter et al., 150 Ala. 294, 43 So. 746, 747:

"The crowning glory of courts of equity is to protect the weak and ignorant from imposition by the strong and intelligent, and while it is true that certain relations of life have been definitely pointed out as raising a presumption of confidence and dependence, yet the general principle is that when one who is strong and well-informed deals with one who is ignorant, weak, and occupying a position of dependence or subordination, the stronger should exercise that uberrima fides in his dealings which leave no trace of imposition. Mr. Pomeroy says: 'When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative.' 2 Pomeroy's Eq. Jur. (3d Ed.) pp. 1670, 1671, § 928. See, also, Kloepping v. Stellmacher, 21 N.J.Eq.

328, 331; Balkum v. Breare, 48 Ala. 75, 79; Burke v. Taylor, 94 Ala. 530, 533, 10 So. 129."

The language employed in the written agreement quoted above, fully persuades us that the parties intended to and did create the relationship of debtor and creditor between themselves to the extent of the money advanced by Charlie Brock, together with interest thereon at eight percent per annum; and that the deed, though absolute in form, was executed and delivered to secure the payment of that indebtedness.

After a careful consideration of all of the evidence, we find ourselves unable to agree with the trial court in the decree rendered.

Reversed and remanded.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.