63 So.2d 670

## COUSINS v. CRAWFORD et al.

### 6 Div. 260.

Supreme Court of Alabama.

Feb. 26, 1953.

Rehearing Denied March 26, 1953.

Henry H. Mize, Jonas Spiro, Jr. and Mize & Spiro, all of Tuscaloosa, for appellant.

.Ward & Ward, Tom B. Ward and Tom B. Ward, Jr., all of Tuscaloosa, for appellees.

LAWSON, Justice.

In March, 1921, Annie B. Cousins, a colored widow, referred to hereinafter as complainant, purchased the suit property, a house and lot situate in the City of Tuscaloosa.

Complainant's occupancy of the suit property began about three months after the purchase and continued up until this proceeding was instituted.

On or about January 13, 1926, complainant mortgaged the suit property to W. E. Hobson to secure an indebtedness of $550. The record on this appeal tends to show that this mortgage to Hobson was foreclosed and that S. J. Pearson was the purchaser. In any event, S. J. Pearson on, to wit, September 12, 1931, executed a deed conveying the suit property back to Annie B. Cousins for a recited consideration of $550.

On the same day that Pearson executed the deed to complainant, she mortgaged the suit property to Mrs. Mary W. Collins to secure an indebtedness of $233.56. Some part of the money borrowed by complainant from Mrs. Collins was used by her in obtaining the deed from Pearson.

In the latter part of 1931 the Tuscaloosa Roofing and Furnace Company put a roof

on the house at a cost of $207.70. To secure the payment of the cost of the roof complainant on December 14, 1931, executed a mortgage on the suit property to the Tuscaloosa Roofing and Furnace Company.

Complainant paid the first installment due to the roofing company. She failed to make the other payments as they became due and solicited the aid and assistance of Henry B. Hanly, who was engaged in the loan business in Tuscaloosa and from whom she had borrowed money on short loans from time to time. Hanly operated a short loan business known as Liberty Investment Company and also made loans on real estate. On or about January 21, 1933, Hanly paid the roofing company the amount due it by complainant and on that day the mortgage to the roofing company was transferred for a cash consideration and without recourse to Hanly.

Complainant encountered difficulty in making her payments to Mrs. Collins and to Hanly and it was suggested to her by Mrs. Collins' agent that since Hanly held the roofing company mortgage, she might try to get him to pay off her indebtedness to Mrs. Collins. Complainant contacted Hanly in accordance with that suggestion. Hanly paid Mrs. Collins the amount then due her by complainant.

On February 21, 1933, complainant executed a mortgage to Henry B. Hanly on the suit property to secure an indebtedness of $327.84, with interest. Complainant received no money from Hanly at the time this mortgage was executed. The amount of the mortgage indebtedness was the total of the sums owed to Mrs. Collins and to Hanly on the roofing company mortgage. The record sufficiently shows that as a result of the execution of the mortgage of February 21, 1933, the indebtedness to Mrs. Collins was paid and the previous indebtedness to Hanly was included therein.

Complainant got behind with her payments on the indebtedness to Hanly secured by the mortgage of February 21, 1933. She was notified by Hanly that the mortgage would be foreclosed unless payments were made. The indebtedness not being paid, Hanly authorized and directed his attorney to proceed to collect the indebtedness or foreclose the mortgage. Complainant took the matter up with Hanly and his attorney and on or about March 5, 1934, in the office of Hanly's attorney, complainant executed an instrument which on its face is an absolute conveyance of the fee simple title to the suit property by complainant to Hanly. On the same day and as a part of the same transaction complainant and Hanly and the latter's wife entered into a written contract or agreement which is referred to by the parties as "a bond for title," which reads in material parts as follows:

"This indenture, made and entered into on this the 5th day of March, 1934, between Henry B. Hanly and wife, Maude B. Hanly, as parties of the first part, and Annie B. Cousins, as party of the second part,

"Witnesseth:

"1. That the said parties of the first part agree to sell to the party of the second part the following described real estate lying and being in the City of Tuscaloosa, County of Tuscaloosa, State of Alabama, to-wit:

(Description)

for the price of Three Hundred Fifty and no/100 ($350.00) Dollars, being payable in monthly installments of $12.50, with interest from date,—the first installment being due on the 5th day of April, 1934, and a like sum of $12.50 on the 5th day of each succeeding month thereafter, until the said sum of $350.00, with interest has been fully paid, and each of said monthly installments is to be evidenced by a waiver promissory note of even date.

"2. Said second party shall have the privilege to pay the whole of said principal sum remaining unpaid at the time of making any monthly payment herein provided, with interest to date of payment.

"3. It is further mutually agreed by and between the parties hereto as follows:

"(a) That the said party of the second part covenants and agrees that time is of the essence of this contract, and that failure to do and perform any of the agreements agreed to be done or performed, or a failure to pay any one of said installments

within thirty days after maturity of the same, then in that event the said parties of the first part shall have the option to declare this as null and void, and all rights of said party of the second part under this agreement shall at once terminate, and any and all payments made by said second party shall be treated as a reasonable rental to the date of said default or non-payment, and shall remain the property of said first parties, and this contract shall be declared void, and the said second party shall become, as to the property herein described, the tenant at will of said first parties.

"(b) That the party of the second part, her heirs and assigns agrees to pay Insurance, Taxes and all assessments on said property, including the 1933 taxes.

"(c) That the said parties of the first part agree, in case said second party shall be unable, by reason of being out of employment, resulting from ill health or other reasonable cause, to pay the installments as hereinbefore stipulated, to waive the right during such absence of employment (for a period not exceeding ninety days) to terminate this agreement as provided for in the preceding first clause hereof. Provided, however, that said parties of the first part shall be notified in writing within thirty days after first default, that said party of the second part is out of employment, and be furnished with satisfactory evidence thereof, and a statement of the cause therefor, and unless such notice in writing, is given to said party of the first part, then this stipulation extending the time of payment shall be void and of no effect.

"(d) The parties of the first part, upon the payment of all of said sum of $350.00 with the interest thereon, and upon the due and faithful performance of all of the agreements and covenants herein agreed to be done or performed, shall at the *option* of the party of the second part execute and deliver to the party of the second part a good and sufficient warranty deed of conveyance to said party of the second part to said property at the cost and expense of the parties of the first part." (Emphasis supplied.)

At the same time complainant executed twenty-eight notes as provided in the written agreement, which notes were duly delivered to Hanly.

Hanly died testate on October 23, 1946, without having conveyed the suit property to complainant, although she had continued to occupy the premises.

Under the terms of Hanly's will, all of his property went to his wife, Maude Beatrice Hanly. Complainant continued to occupy the suit property.

On January 28, 1948, Maude Beatrice Hanly conveyed the suit property to her daughter, Jeane Hanly Crawford, by warranty deed wherein the consideration is expressed as "love and affection and the sum of One and no/100 Dollars etc." Complainant was still occupying the suit property and was told by Maude Beatrice Hanly that the latter had given the suit property to her daughter.

Within a comparatively short time after she received her deed to the property, Jeane Hanly Crawford advised complainant of her desire to sell the property and suggested that complainant get another place to live.

Complainant then consulted an attorney and this proceeding was instituted in the circuit court of Tuscaloosa County, in equity, on July 17, 1948.

By this proceeding complainant seeks to regain the legal title to the suit property. Respondents to the amended bill are Jeane Hanly Crawford and Maude Beatrice Hanly, in her individual capacity and as executrix of the last will and testament of Henry B. Hanly.

If we correctly understand the amended bill, complainant seeks to regain the legal title to the suit property on three separate and distinct theories.

She seeks to have the deed and the written agreement construed together and when so construed declared to constitute a mortgage and that she be allowed to redeem the suit property in an exercise of the equity of redemption.

Complainant seeks to have the deed of March 5, 1934, cancelled on the ground that the grantee therein, Henry B. Hanly, who

had a mortgage on the suit property (February 21, 1933), caused complainant to execute the said deed of March 5, 1934, in lieu of the foreclosure of the said mortgage for an inadequate consideration by means of oppression, undue influence and fraud.

It is also prayed that a decree be rendered requiring respondents to specifically perform the written agreement of March 5, 1934, by conveying the suit property to complainant.

The respondents filed their separate answers to the amended bill, which answers are identical in all material respects. The respondents admit that on or about February 21, 1933, the complainant executed a mortgage on the suit property to Henry B. Hanly to secure an indebtedness of approximately $327, which indebtedness it is averred was not paid by the complainant as provided in the mortgage. Respondents aver that because of such default, Henry B. Hanly notified the complainant of his intention to foreclose, whereupon it was agreed that complainant execute a deed to the suit property in lieu of foreclosure and that the parties enter into the written agreement. Respondents deny that the deed of March 5, 1934, was for an inadequate consideration and that it was executed as the result of oppression, undue influence or fraud on the part of Henry B. Hanly. Respondents also deny that it was the intention of the parties that the deed and written agreement should operate as a mortgage and aver that it was the intention of the parties that the complainant would merely have the right to repurchase the suit property by complying with the terms and provisions of the agreement. Respondents aver that the complainant failed to make payments as provided in the said written agreement and that because of such failure Henry B. Hanly cancelled the written agreement, but consented that complainant should continue to occupy the suit property as his tenant. Respondents aver that since the date on which the written agreement was cancelled complainant has occupied the suit property as a tenant and such payments as she has made since cancellation have been for the rental of the property.

Respondents also set up the statutes of limitations and the doctrine of laches as defenses.

Respondents made their answers cross-bills praying that the court decree that complainant has no right, title or interest in the suit property and that she be ordered to vacate. It is also prayed in the cross-bill that complainant be required to pay such sum as the court may determine she is due as rent for the use and occupancy of the premises.

Testimony was heard orally by the trial court.

On January 15, 1951, a final decree was rendered wherein it appears that the trial court found that the deed of March 5, 1934, was a valid conveyance and that it was not the intention of complainant or Henry B. Hanly that the said deed should operate as a mortgage to secure any indebtedness of complainant to Hanly; that Hanly on or about March 5, 1935, cancelled the "bond for title" because of the failure of complainant to make monthly payments as provided therein and that from the time of cancellation until the date of the decree complainant has occupied the suit property as a tenant; that "whatever claim, if any, the complainant had in and to said property are [sic] barred both by laches and the statutes of limitations." Based upon such findings the trial court decreed that complainant was not entitled to the relief prayed for in her bill of complaint, as amended, and such relief was denied.

The trial court found, however, that the respondents were entitled to a part of the relief prayed for in their cross-bills and decreed as follows: Jeane Hanly Crawford is the legal owner of and has a valid deed to the suit property. Complainant has no right, title or interest in and to the suit property. Complainant has occupied the property as a tenant since January 4, 1935, and is liable to the owner for its use and occupation. Jeane Hanly Crawford being entitled to the immediate possession of the suit property, complainant was ordered and directed to turn said property over to the respondent, Jeane Hanly Crawford, and the issuance of an order of restoration was decreed.

From the decree of January 15, 1951, the complainant appealed to this court.

The holdings of the trial court to the effect that the relationship of mortgagor and mortgagee did not exist between complainant and Hanly subsequent to March 5, 1934, and that since January 1935 complainant has occupied the suit property as a tenant, are the pivotal points in the case.

Such holdings not only affect complainant's right to have the deed of March 5, 1934, declared to be a mortgage, but also affect the other theories on which complainant seeks to regain the legal title to the suit property.

If complainant has been occupying the premises as the tenant of Hanly and his successors in interest, then her possession has been that of her landlords and her effort comes too late to have the deed of March 5, 1934, cancelled on the ground that it was executed for an inadequate consideration and as a result of oppression, undue influence and fraud on the part of Hanly. Goree v. Clements, 94 Ala. 337, 10 So. 906.

Likewise, if the trial court found correctly that the so-called "bond for title" was properly cancelled in January 1935 and that thereafter complainant occupied the premises as a tenant, then she would not be entitled at this time to a decree requiring specific performance of the cancelled instrument.

■ Ordinarily, the right to have a deed declared a mortgage must be asserted within ten years after the execution of the deed. Gerson v. Davis, 143 Ala. 381, 39 So. 198; Staples v. Barret, 214 Ala. 680, 108 So. 742, 46 A.L.R. 1084; Richter v. Noll, 128 Ala. 198, 30 So. 740. But this is not so where the instrument has been recognized as a mortgage by the parties and the mortgagor has retained possession of the land. Staples v. Barret, supra. See Dixon v. Hayes, 171 Ala. 498, 55 So. 164, and Ammons v. Ammons, 253 Ala. 82, 42 So.2d 776. So the question as to the correctness of the holding of the trial court that complainant's right to have the deed declared a mortgage was barred by the statutes of limitations and by laches depends on the question of whether it was correctly held that the re-lationship of mortgagor and mortgagee had not existed since the execution of the deed of March 5, 1934, and that since January, 1935, complainant has occupied the suit property as a tenant. If such latter holdings are correct, then complainant would be barred because, as observed above, her occupancy would be that of her landlord and would not prevent the running of the statute. More than fourteen years had elapsed between the time of the execution of the deed and the date on which this proceeding was begun.

It has been settled since the early decisions of this court that a court of equity in this state has jurisdiction to entertain a bill to have a deed declared a mortgage and to grant such relief. We have a multitude of cases wherein that principle has been involved. The conclusions reached in those cases are based in a large measure on the facts of the particular case, but there are certain well-defined legal principles laid down in our cases, to which we will refer.

■ Where an instrument on its face appears to be an absolute conveyance, parol proof is admissible to convert the instrument into a mortgage by proving that the parties intended it to operate only as a security. Hudson v. Isbell, 5 Stew. & P. 67; Parish v. Gates, 29 Ala. 254; Douglass v. Moody, 80 Ala. 61; Rogers v. Burt, 157 Ala. 91, 47 So. 226; Vickers v. McNeal, 242 Ala. 652, 7 So.2d 858. But the parol proof to that effect must be clear, consistent and convincing. English v. Lane, 1 Port. 328; Mitchell v. Wellman, 80 Ala. 16; Knaus v. Dreher, 84 Ala. 319, 4 So. 287; Rose v. Gandy, 137 Ala. 329, 34 So. 239; Lindsey v. Hamlet, 235 Ala. 335, 179 So. 234; Carlisle v. Blackmon, 257 Ala. 599, 60 So.2d 332; Parrish v. Parrish, ante, p. 13, 61 So.2d 130; and other cases too numerous to cite.

■ Although a written instrument upon its face imports a conditional sale, it may be shown by parol evidence that it was intended by the parties to operate as a mortgage. Eiland v. Radford, 7 Ala. 724; McKinstry v. Conly, 12 Ala. 678; Swift v. Swift, 36 Ala. 147; Mobile Bldg. & Loan Ass'n v. Robertson, 65 Ala. 382; Nelson v.

Wadsworth, 171 Ala. 603, 55 So. 120; Morton v. Allen, 180 Ala. 279, 60 So. 866, L.R.A. 1916B, 11; Lewis v. Hickman, 200 Ala. 672, 77 So. 46; Hogan v. Moore, 221 Ala. 355, 128 So. 790. For equity regards the substance and not the form, and it matters not what form the transaction may assume, if it was intended to accomplish the securing of a debt equity regards the transaction as a mortgage. Lewis v. Hickman, 200 Ala. 672, 77 So. 46; Lewis v. Davis, 198 Ala. 81, 73 So. 419. Equity looks through form to substance. Smith v. Thompson, 203 Ala. 87, 82 So. 101; Lamkin v. Lovell, 176 Ala. 334, 58 So. 258.

■ Where a conveyance and defeasance are made in performance and upon terms of the same agreement, they are generally considered and construed as contemporaneous acts and as forming one transaction. Cosby v. Buchanan, 81 Ala. 574, 1 So. 898; Vincent v. Walker, 86 Ala. 333, 5 So. 465; Thomas v. Livingston, 147 Ala. 200, 40 So. 504; Smith v. Smith, 153 Ala. 504, 45 So. 168; Thomas v. Livingston, 155 Ala. 546, 46 So. 851.

■■ We have referred to the rule that where the instrument on its face appears to be an absolute conveyance and the question is whether the instrument is an absolute conveyance or a mortgage, parol proof must be clear, consistent and convincing to enable a court of equity to declare the instrument a mortgage.

But this severe rule as to the measure of proof does not prevail where the writings, in one or separate instruments, express a conditional sale. Reeves v. Abercrombie, 108 Ala. 535, 19 So. 41. Where the inquiry is whether a mortgage or a conditional sale was intended, the inclination of equity is always to lean against the latter for the reason that an error which would convert the transaction into a mortgage would not be as injurious as a mistake which would change a mortgage into a conditional sale. Freeman v. Baldwin, 13 Ala. 246; Turnipseed v. Cunningham, 16 Ala. 501; Locke's Ex'r v. Palmer, 26 Ala. 312; McNeill v. Norsworthy, 39 Ala. 156; Turner v. Wilkinson, 72 Ala. 361; Cosby v. Buchanan, 81 Ala. 574, 1 So. 898; Glass v. Hieronymus

Bros., 125 Ala. 140, 28 So. 71; Rose v. Gandy, 137 Ala. 329, 34 So. 239; Irwin v. Coleman, 173 Ala. 175, 55 So. 492; Van Heuvel v. Long, 200 Ala. 27, 75 So. 339; Richardson v. Curlee, 229 Ala. 505, 158 So. 189; Parrish v. Parrish, ante, p. 13, 61 So. 2d 130; and many other cases.

The rule as to measure of proof is well stated in Douglass v. Moody, 80 Ala. 61, 66–67, as follows:

"* * * The requisite degree of proof varies as the controversy may be, whether an unconditional sale or a mortgage, and whether a conditional sale or a mortgage, was intended. In the former case, the evidence must be clear and convincing; in the latter, courts of equity are inclined to consider the transaction as a mortgage. Turner v. Wilkinson, 72 Ala. 361. The complainant will be given the benefit of the rule last stated, in the consideration of the evidence. *The rule, however, does not create a presumption of law, that such transaction is a mortgage, nor does it cast on defendants the burden of proving, that it is a conditional sale, as appellant's counsel insist.* The extent of the rule is, when on an examination of the entire evidence, the intention of the parties remains in doubt, the court leans to the construction in favor of a mortgage, not because of any presumption of law, but on the conservative and equitable ground, that such construction will probably be less *injurious in its results, and more generally promotive of the purposes of equity.* * * *" (Emphasis supplied.)

See Glass v. Hieronymus Bros., 125 Ala. 140, 28 So. 71, and Rose v. Gandy, 137 Ala. 329, 34 So. 239, wherein it was stated that where the controversy was whether a mortgage or a conditional sale was intended, the rule that equity leans to the construction in favor of the mortgage does not relieve the complainant of the burden of proving his case.

■ The ascertainment of different understanding does not make a "doubtful case" in which equity will construe the transaction to be a mortgage. Douglass v. Moody,

80 Ala. 61; Thomas v. Livingston, 155 Ala. 546, 46 So. 851. The fact that the party executing a conveyance, absolute in its terms, intended and considered it as a mortgage is not sufficient to make it a mortgage. To produce that effect such must have been the clear and certain intention and understanding of the other party likewise. West v. Hendrix, 28 Ala. 226; Martin v. Martin, 123 Ala. 191, 26 So. 525; Thornton v. Pinckard, 157 Ala. 206, 47 So. 289; Nelson v. Wadsworth, 171 Ala. 603, 55 So. 120; Otts v. Avery, 234 Ala. 122, 173 So. 844; Wall v. Drasheff, 249 Ala. 441, 31 So.2d 598.

■ Whether a transaction is to be considered as an absolute sale with right to repurchase or a mortgage depends upon the intention of the parties, to be ascertained by the circumstances attending the transaction. Eiland v. Radford, 7 Ala. 724. The intention may be collected from the extrinsic circumstances and the internal evidence afforded by the papers. Jones v. Kennedy, 138 Ala. 502, 35 So. 465. The subsequent conduct of the parties may be considered. Wilkinson v. Roper, 74 Ala. 140; Oakley v. Shelley, 129 Ala. 467, 29 So. 385; Rose v. Gandy, 137 Ala. 329, 34 So. 239.

Every case, of necessity, depends in a great measure upon its peculiar facts and circumstances. Mobile Bldg. & Loan Ass'n v. Robertson, 65 Ala. 382; Turner v. Wilkinson, 72 Ala. 361; Rapier v. Gulf City Paper Co., 77 Ala. 126; Mitchell v. Wellman, 80 Ala. 16; Cosby v. Buchanan, 81 Ala. 574, 1 So. 898; Reeves v. Abercrombie, 108 Ala. 535, 19 So. 41; Harrison v. Maury, 157 Ala. 227, 47 So. 724. For there are, in most cases of this character, no tests which will enable a court to determine with anything like positive certainty whether a mortgage or a conditional sale was intended. Eiland v. Radford, 7 Ala. 724; Locke's Ex'r v. Palmer, 26 Ala. 312; Mobile Bldg. & Loan Ass'n v. Robertson, 65 Ala. 382; Turner v. Wilkinson, 72 Ala. 361; Rose v. Gandy, 137 Ala. 329, 34 So. 239; Irwin v. Coleman, 173 Ala. 175, 55 So. 492; Brock v. Brock, 245 Ala. 296, 16 So.2d 381.

■ There are some facts which are regarded of controlling importance in determining the question. Did the relation of debtor and creditor exist before and at the time of the transaction? Or, if not, did the transaction commence in a negotiation for a loan of money? Was there great disparity between the value of the property and the consideration paid for it? Is there a debt continuing for the payment of which the vendor is liable?

If any of these facts are found to exist, in a doubtful case, it will go far to show a mortgage was intended. If all of them are found concurring, the transaction will be regarded as a mortgage rather than a conditional sale, unless the purchaser, by clear and convincing evidence, removes the presumption arising from them. Eiland v. Radford, 7 Ala. 724; Williamson v. Culpepper, 16 Ala. 211; Mobile Bldg. & Loan Ass'n v. Robertson, 65 Ala. 382; Douglass v. Moody, 80 Ala. 61; Turner v. Wilkinson, 72 Ala. 361; Daniels v. Lowery, 92 Ala. 519, 8 So. 352; Winn v. Fitzwater, 151 Ala. 171, 44 So. 97; Irwin v. Coleman, 173 Ala. 175, 55 So. 492; Brock v. Brock, 245 Ala. 296, 16 So.2d 881.

■ An instrument cannot operate, at one and the same time, as a mortgage and a conditional sale, these two classes of conveyances being chiefly distinguished by the existence of a debt in the former and its nonexistence in the latter. Vincent v. Walker, 86 Ala. 333, 5 So. 465.

A debtor importuned for the payment of his debt or a borrower pressing for a loan will often intend to execute, and the creditor to accept, an absolute conveyance in satisfaction, or to purchase absolutely or conditionally rather than to make a loan. In such cases, as the transaction does not result in the continuance or creation of a debt, whatever may be its true character, it is not a mortgage. Mobile Bldg. & Loan Ass'n v. Robertson, 65 Ala. 382; Knaus v. Dreher, 84 Ala. 319, 4 So. 287. For when no debt exists a mortgage is impossible. Pearson v. Seay, 35 Ala. 612; Peeples v. Stolla, 57 Ala. 53; Haynie v. Robertson, 58 Ala. 37; Cook v. Benton, 250 Ala. 259, 33 So.2d 877; Duncan v. Leonard, 251 Ala. 333, 37 So.2d 210; Parrish v. Parrish, ante, p. 13, 61 So.2d 130.

The absolutely certain thing which the cases establish is that if there is no continuing debt to be secured, there can be no mortgage; but in practical operation, this axiomatic proposition often affords no substantial relief in solving the problem, since the ascertainment of the existence of a debt is in many instances attended with as much difficulty as the decision of the main question. Indeed, it may be said to be but another form of the main question itself. Reeves v. Abercrombie, 108 Ala. 535, 540, 19 So. 41, 42.

In Reeves v. Abercrombie, supra, it was said:

"It is helpful to ascertain whether the transaction began in an application for the loan of money; was there great disparity between the value of the property and the consideration of the conveyance; whether the grantor retained possession, paid taxes, made improvements a tenant would not probably make, or otherwise, with the knowledge and consent of the grantee, acted towards the property in a way an owner would naturally do when his property was incumbered. *The conduct of the parties under, and with reference to, any agreement made by them, throws a strong light upon their understanding of its scope and purpose; and, upon this idea, the inquiries above suggested would naturally arise in the mind of the searcher after truth, who, in the midst of conflicting statements, would probably give more heed to the actions of the parties than to their words.*" (Emphasis supplied.)

To like effect is the case of Lindsey v. Hamlet, 235 Ala. 335, 179 So. 234.

This record is voluminous, containing nearly 500 pages, and presents the inevitable conflict of testimony and somewhat of the familiar difficulty of determining as a fact the intention of the parties. Much is said by appellant's counsel reflecting on the credibility of some of the witnesses who testified on behalf of the respondents. However, the learned trial judge, long a resident of Tuscaloosa County, with many years experience at the bar and as a jurist, who saw and heard the witnesses, was in a much better position to judge of their credibility than are we. Mullinax v. State ex rel. Hunter, 244 Ala. 435, 14 So.2d 150. We have often observed that a decree of the trial court will not be disturbed where the witnesses were examined ore tenus, seen and heard by the trial court, unless the decree is plainly contrary to the great weight of the evidence. Brannon v. McCormick, 211 Ala. 546, 101 So. 56; Jackson v. Jackson, 204 Ala. 257, 85 So. 482.

The trial court did not rule on objections to evidence during the course of the trial, stating that the cause would be tried in accordance with the provisions of § 372 (1), Title 7, Code 1940, 1951 Cum.Pocket Part, Vol. 2, p. 59, to the effect that in cases such as this it is unnecessary that objection be made to any testimony or evidence which may be offered by either party and on the consideration of such cases the trial court should consider only such testimony as is relevant, material, competent and legal, and on appeal this court shall consider only such testimony as is relevant, material, competent and legal, unless specific objection was interposed and the ruling made on such objection by the trial court. Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115. While the decree of the trial court does not expressly state that only the relevant, material, competent and legal testimony was considered, we are convinced that only such evidence was considered in view of the frequent statement made by the trial court during the course of the trial that only such testimony would be considered.

The complainant testifying in her own behalf gave evidence as to transactions with and statements by Henry B. Hanly, deceased. The complainant was not a competent witness as to this line of testimony in view of the provisions of § 433, Title 7, Code 1940. Parks v. Parks, 66 Ala. 326; Downing v. Woodstock Iron Co., 93 Ala. 262, 9 So. 177; Redwine v. Jackson, supra. We will not on this appeal consider that part of the testimony of complainant to which the exclusion provisions of § 433, Title 7, Code 1940 ("dead man's statute"),

have application. Redwine v. Jackson, supra.

It is undisputed that the relationship of debtor and creditor existed between complainant and Henry B. Hanly at the time the deed of March 5, 1934, was executed. But this relationship is not conclusive. Mobile Bldg. & Loan Ass'n v. Robertson, 65 Ala. 382.

The consideration expressed in the deed of March 5, 1934, as heretofore shown, was $350. Complainant received no money. The consideration expressed in the deed was the amount of principal still owed by complainant on the indebtedness secured by the mortgage of February 21, 1933, together with interest, attorney's fees, and recording fee. Much is said by counsel for appellant as to the inadequacy of consideration. The witnesses varied greatly in their estimates of the value of the suit property in March, 1934. We are confronted here with the situation where witnesses testified orally before the trial court who, as we have already observed, was in a better position to pass on this question of valuation than we are. In any event, we do not regard the disparity between the value of the property and the consideration expressed in the deed so great that it should be allowed to control the written instruments and overcome the effect of all the other facts and circumstances. Perdue v. Bell, 83 Ala. 396, 3 So. 698. Inadequacy of price or consideration alone will not convert an absolute conveyance into a security for the repayment of money. West v. Hendrix, 28 Ala. 226; Rapier v. Gulf City Paper Co., 77 Ala. 126; Vincent v. Walker, 86 Ala. 333, 5 So. 465; Martin v. Martin, 123 Ala. 191, 26 So. 525.

The written contract or agreement executed on March 5, 1934, which the parties refer to as a "bond for title" clearly appears on its face to be a contract whereby the complainant was given the right to repurchase, but was not obligated to do so. Haynie v. Robertson, 58 Ala. 37; Lindsey v. Sturkie, 239 Ala. 340, 194 So. 812. The execution of the notes by complainant at the time the deed and the so-called "bond for title" were executed is not at all conclusive of the fact that complainant was

binding herself for the repayment of the indebtedness secured by the mortgage of February 21, 1933. Such practice is not at all uncommon in conditional sale transactions.

Complainant was unquestionably in difficult financial circumstances. She owed Hanly money, secured by a mortgage on her home. Times were hard and complainant was unable to pay her indebtedness to Hanly. Hanly, the mortgagee, had a right of foreclosure. He advised complainant of his intention to do so. There are tendencies in the evidence going to show that complainant requested that foreclosure proceedings not be instituted, in order that she be relieved of embarrassment. The testimony of the attorney, a distinguished member of the bar, who drew up the papers and of his secretary would certainly justify a finding by the trial court that complainant was fully aware of the effect of the instruments which she signed and that she was not coerced to do so.

Perhaps it is well to consider at this time complainant's contention that she was just an illiterate colored woman, unfamiliar with business transactions and without friends and therefore an easy target for a grasping mortgagee.

In March 1934 complainant was approximately thirty-seven years of age. She had gone through the sixth grade in school. She had been involved in several business transactions where mortgages and deeds were executed. We are clear to the conclusion that the evidence shows that she knew the difference between a deed and a mortgage. Rodgers v. Burt, 157 Ala. 91, 47 So. 226. Complainant had worked in the homes of prominent families and in the offices of outstanding physicians in the city of Tuscaloosa. She was by no means friendless or illiterate.

The evidence amply supports a finding by the trial court that subsequent to the execution of the papers on March 5, 1934, complainant occupied the premises without paying the sum of $12.50 per month as she was supposed to do and that in January 1935 Hanly notified complainant that he was forfeiting the so-called bond for title

in compliance with the express provision contained therein.

The evidence further shows that complainant continued to occupy the premises and made monthly payments from time to time to Hanly or his agent. It is undisputed in the evidence that in 1937 Hanly's agent served written notice on complainant to give up the occupancy of the premises because of her failure to pay rent. There are tendencies in the evidence going to show that subsequent to the service of this notice upon complainant she arranged to continue the occupancy of the premises by paying to Hanly the sum of $12.50 per month. The evidence further tends to show that later on the amount which complainant was required to pay was increased from $12.50 to $15 a month, but the payments were subsequently reduced to $12.50 by order of the Office of Price Administration.

After the death of Hanly, complainant did not take any steps to determine her rights in the property, although she admits that Mrs. Maude Beatrice Hanly told her that she had given the property to her daughter, Mrs. Jeane Hanly Crawford. Subsequent to Hanly's death and prior to the time the property was deeded to Mrs. Crawford, complainant made payments to Mrs. Hanly and after the deed to Mrs. Crawford, complainant made payments to her. It was not until after Mrs. Crawford had advised complainant that the property would be sold that complainant complained of her situation.

Complainant admits that she always got a receipt when she made payments, but testified that approximately three or four years before the date of trial her daughter destroyed her receipts. However, she did have some receipts executed subsequent to that time which showed that the payments were made for "rent."

Many years before this suit was filed complainant had paid to Hanly the sum of $350, the amount which she was supposed to pay under the terms of the so-called bond for title. Yet she took no steps to secure a conveyance from Hanly, but continued for a number of years to pay for the occupancy of the premises. This fact alone is strongly persuasive of the fact that complainant fully realized that the transaction of March 5, 1934, was not a mortgage but was an absolute conveyance with a right to repurchase within a prescribed time; that she had failed to repurchase within that period of time and her right to do so had been forfeited and that her continued occupancy of the premises was that of a tenant.

We have heretofore expressed the opinion that this record supports a finding that complainant was not an illiterate person, but aside from that fact it appears that complainant's daughter was a college graduate, a teacher in the public schools of Jefferson County, who frequently visited with complainant during the school year and lived with her during the summer vacation. It is hard to believe that complainant would not have sought the assistance of her daughter to secure the conveyance from Hanly if she had not understood that she had no longer any right to such conveyance.

We are familiar with the statement found in many of our cases that "once a mortgage always a mortgage." Subsequent conduct cannot change a mortgage into a conditional sale. But, as we have heretofore observed, subsequent conduct of the parties is a matter which bears heavily on the question as to what the parties originally intended.

There are other circumstances which tend to support the conclusion of the trial court. The complainant has never assessed the property subsequent to 1934 nor paid any taxes thereon. She carried no insurance on the property. Until shortly prior to the time this suit was filed, the property had been assessed for taxes by Hanly and his successors in interest and they had paid the taxes, as well as the insurance.

The evidence in regard to the making of improvements on the property subsequent to March 1934 was in sharp conflict.

We have given careful consideration to the voluminous record in this case and to the fine brief submitted by the able counsel who represents the complainant on this appeal. We are constrained, however, under the rules governing our review in cases of this character, to the conclusion that the

trial court did not err to a reversal in finding that subsequent to January, 1935, complainant has occupied the suit property as a tenant. As heretofore indicated, this finding precludes complainant from any of the relief sought in her bill as amended.

We have treated all assignments of error argued in brief.

The decree of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.