305 So.2d 369

**Burley PALMER**

v.

**Raymus LUNDY and Eula Rae Lundy.**

**SC 818.**

Supreme Court of Alabama.

Dec. 19, 1974.

Gibbons, Stokes & Clark, Mobile, for appellant.

Chase R. Laurendine, Mobile, for appellees.

MADDOX, Justice.

This is a suit to reform a warranty deed. The trial court, after hearing the evidence, made extensive findings of fact, and concluded that the warranty deed should "have the force and effect of a mortgage only."

Appellant does not question the court's authority to reform the deed; he does argue that the adverse parties failed to sustain their burden of proof.

The facts, briefly stated, follow.

In 1962, Raymus and Eula Rae Lundy borrowed $6,099.84 and mortgaged their house to Modern Homes Construction Company. They defaulted in December, 1967, and the mortgagee threatened to foreclose. At Mr. Lundy's request, Burley Palmer, a friend of the Lundy's, agreed to assume the unpaid balance of the mortgage. The Lundys and Palmer met with a representative of Modern Homes at the Lundy home on December 26, 1967. There, Palmer paid $206.75, and Modern Homes transferred the mortgage account to Palmer's name.

At Palmer's request, the Lundys, on December 30, 1967, delivered to Palmer the warranty deed in question. Upon delivery of the deed, the Lundys orally agreed to repay Palmer the amount of his investment, but the parties did not agree upon a specific sum. There is evidence from which the trial court could have concluded that Palmer did not know the outstanding balance of the mortgage at that time.

On June 1, 1968, Palmer prepared a written instrument entitled "Purchase Agreement" which the Lundys signed agreeing to pay Palmer $4,623.59 for the Lundy house and lot. The agreement read, in part, as follows:

"I (we) also agree that the purchase price is to be paid as follows: $50.00 (Fifty Dollars) per month due on the first of each month, on the principal plus taxes, insurance, repairs, interest (8%) on unpaid balance and all closing cost. We also agree that in the event of default of three payments or in the event Burley Palmer does not receive deeds from Modern Homes, then all monies previously paid will be considered rent and this agreement considered null and void."

Mr. Palmer testified that this agreement was, in effect, the agreement which he intended to prepare when he received the deed.

In October, 1969, Palmer sent the Lundys an instrument entitled "Statement of *Mortgage* Account." (Emphasis added.) In this statement, Palmer credited the Lundys' account for four monthly payments in 1969, but noted that the Lundys still owed $220.00 for 1969. The statement continued:

"IN ACCORDANCE with the terms of the PURCHASE AGREEMENT signed by you on June 1, 1968, and whereas you have made no effort to pay PAST DUE AMOUNT, you have left me no recourse but to invoke the last paragraph of said agreement, ie:

"'We also agree that in default of Three Payments, then all monies previously paid will be considered Rent and this Agreement will be considered "NULL and VOID."'

"THEREFORE, this Statement dtd Oct. 14, 1969 is to serve as NOTICE OF NULLIFICATION of said PURCHASE AGREEMENT dtd June 1, 1968, and to DECLARE THE ENTIRE PAST DUE AMOUNT of TWO HUNDRED TWENTY DOLLARS AND NO CENTS ($220.00) DUE and PAYABLE as of Thirty Days (30) from the date of this Notice or PREMISES MUST BE VACATED."

Upon receipt of this statement, Eula Rae Lundy contacted Palmer, who told her to disregard it and continue making monthly payments. Palmer issued a receipt dated October 20, 1969, for "payment on house and lot." Other receipts were issued for "house payment." No receipts were issued for "rental payments."

Palmer paid off the mortgage on February 6, 1971. His payments to the mortgagee totaled $2,749.77.

Between 1969 and 1972 the Lundys made several major improvements on the house at their own expense. Palmer paid $67.84 for paint, but added this amount to the Lundys' unpaid balance. Palmer did not repair the house or inspect it, and only visited in it the one time, on December 26, 1967, when Mr. Lundy asked him to assume the mortgage. The Lundys lived in the house continuously.

On October 19, 1972, Palmer served on the Lundys a ten-day eviction notice. The Lundys then filed this suit to reform the deed.

■ The deed, on its face, appears to be an absolute conveyance. Consequently, the burden of proof was upon the complainants (Lundys) to show by clear and convincing evidence that the conveyance was intended to be a mortgage. Reeves v. Abercrombie, 108 Ala. 535, 19 So. 41 (1895); Cousins v. Crawford, 258 Ala. 590, 63 So.2d 670 (1953); Satterfield v. Satterfield, 288 Ala. 182, 258 So.2d 889 (1972); cf. Original Church of God, Inc. v. Perkins, 292 Ala. 283, 293 So.2d 292 (1974).

■ All of the evidence was not in favor of reformation. There was evidence that from 1968 through 1972 Palmer listed the payments received from Lundy as "rental income" on his federal tax returns, and that during these years he depreciated the house for tax purposes. However, both parties testified the essence of the agreement was that Palmer expected the Lundys to repay the loan in full or lose their house. A preponderance of the evidence is sufficient to support the trial court's finding to the effect that "the transaction commenced in a proposition to borrow money and that there was [a] . . . continuing debt." *Satterfield,* supra, 288 Ala. at 185, 258 So.2d at 892.

The essence of the agreement was stated by Palmer in answer to a question by the court:

"THE COURT: I'll put it in everyday words. If I'm wrong you correct me. You told them I'm giving you this money, I want a deed for my protection,

but although we're good friends I'm not going to let that interfere with the money I'm putting out of my pocket. I want every dime I've put into this property or the property is mine.

"A Yes, sir."

The trial court considered the June 1, 1968 "purchase agreement" to be a "defeasance"—that is, "an instrument which defeats the force or operation of some other deed . . . ." The "purchase agreement" was prepared by Palmer. He testified that the "purchase agreement" stated what the parties had agreed upon at the time the deed was delivered to Palmer in December.

In Reeves v. Abercrombie, 108 Ala. at 538, 19 So. at 42, this Court commented on the effect of a contemporaneous agreement, as follows:

"When the writings, in one or separate instruments, express a conditional sale, the courts incline to construe the instrument or instruments to be a mortgage, where parol evidence is introduced tending to show a mortgage was designed; or, if it be admitted there was a contemporaneous agreement different from that expressed in the writings, such admission will have an important bearing in the weighing the parol evidence, tending to show the absolute conveyance was intended as a mortgage.—Peagler v. Stabler, 91 Ala. 308, 9 So. 157; Daniels v. Lowery, 92 Ala. 519, 8 So. 352. In such cases the severe rule as to the measure of proof does not prevail."

Under the facts of this case, as shown by a preponderance of the evidence, we are not persuaded that the trial court erred in reforming the deed.

The judgment of the trial court is affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and FAULKNER, JJ., concur.