79 So.2d 34

**J. F. GRIMES**

v.

**J. L. WARREN et al. (Warren Trading Co.).**

**4 Div. 713.**

Supreme Court of Alabama.

March 10, 1955.

Rehearing Denied April 7, 1955.

Alice L. Anderson, Enterprise, for appellant.

Braxton B. Rowe, Enterprise, for appellees.

LAWSON, Justice.

This is an appeal by J. F. Grimes from a final decree of the circuit court of Coffee County, in equity.

Although some of the background of the litigation is referred to in the decree, the actual decretal order is simply to the effect that the register divide the sum of $216.12 equally between the appellant and the appellees, J. L. Warren, J. L. Warren, Jr., and V. O. Warren, partners, doing business as Warren Trading Company, hereinafter referred to as the Trading Company.

When the hearing in the court below ended, the parties and the trial court seem to have agreed that there was but one question for decision, namely, in what proportion should eighty-five stacks of peanuts be divided between Grimes and the Trading Company? The peanuts were standing in the field, so at the suggestion of the trial court the parties agreed that they be picked and sold and that the proceeds be turned in to the register to be held by her until the court should decree the amount the litigants were to receive. The said sum of $216.12 was the net amount received from the sale.

The peanuts were grown on a twenty-acre tract of land in Coffee County owned by Grimes but rented by him to one Robert Jackson for the year 1951 under an agreement whereby landlord and tenant were each to receive one-half of the crop or crops grown on the land.

In August, 1951, after the peanut crop had been "laid by," Jackson assigned his interest therein to the Trading Company, to which he was indebted. In view of the rental agreement between Grimes and Jackson, the Trading Company claimed the assignment gave it a half interest in the peanuts.

Grimes claimed that Jackson did not have a one-half interest in the crop at time of assignment for the reason that he, Jackson, had previously agreed that out of his half-interest in the crop he would repay Grimes for two tons of fertilizer used on another crop and for money paid by Grimes to laborers who worked the peanut crop here involved. Grimes and other witnesses gave testimony tending to support that claim.

Jackson testified on behalf of the Trading Company and admitted that he got two tons of fertilizer from Grimes in the early part of May, 1951, which he used on another crop. But he denied that he was to pay for it out of his share of the peanuts, but testified that he paid Grimes cash for the

fertilizer. Jackson also admitted that Grimes paid several persons, including members of Grimes' family, for work supposed to have been performed in the peanut crop which, according to the rental agreement, was to be worked by Jackson or by labor furnished by him. But Jackson stated that those persons were paid without his sanction and, in fact, were employed and paid over his protest, as there was no work needed to be done. Other witnesses testified substantially to the same effect.

■■ The trial court simply believed the witnesses for the Trading Company. The decree almost says as much. The trial judge, a lifelong resident of Coffee County, who saw and heard the witnesses, was in a much better position then are we to judge their credibility. Mullinax v. State ex rel. Hunter, 244 Ala. 435, 14 So.2d 150. We have often observed that a decree of the trial court will not be disturbed where the witnesses were examined ore tenus, seen and heard by the trial court, unless the decree is plainly contrary to the great weight of the evidence. Cousins v. Crawford, 258 Ala. 590, 63 So.2d 670, and cases cited. We certainly cannot say that the findings of fact made by the trial court are plainly contrary to the great weight of the evidence in this case.

The decree here under review was apparently rendered on the theory that an accounting may be had in equity in the exercise of jurisdiction acquired on other grounds. Ex parte Deaton, 243 Ala. 154, 8 So.2d 819. Grimes did not contend in the lower court and we do not understand him to contend in this court that the trial court did not have jurisdiction to state an account between the parties.

The litigation between these parties was begun on November 30, 1951, when the Trading Company, as assignee of Jackson, presented to Hon. S. Fleetwood Carnley, the then judge of the circuit court of Coffee County, in equity, a bill praying that Grimes, his wife and members of his family be enjoined from further interfering with its efforts to harvest the peanut crop. Watkins v. Smith, 211 Ala. 151, 99 So. 907.

There was no specific prayer for a temporary injunction; however, the record shows that on the day of presentation Judge Carnley signed an order for a temporary injunction, which order had been previously affixed to the bill. We further construe the record to show that after the Trading Company executed bond as provided in the order signed by Judge Carnley, the register affixed her signature to the following order, which also had been previously attached or typed on the original bill:

"You will further take notice that said Warren Trading Company had entered into bond in the sum of One Thousand and no/100 Dollars, conditioned as prescribed by law, which said bond has been approved by me.

"Now, therefore, you, the said J. F. Grimes and Annie Grimes and family, are hereby commanded and enjoined from interfering with molesting the complainants and tenant in harvesting said crop.

"In testimony of all which, I, Gladys Clark, Register of said Court have hereunto set my hand as said Register, this the 30th, day of Nov., 1951."

We understand the record to show that the original bill, the order of the judge and the order signed by the register were all filed in the office of the register on November 30, 1951. As far as we can determine, no formal service was had on Grimes and wife until December 7, 1951.

However, Grimes and wife apparently became aware of the events of November 30 prior to the time of service by the sheriff, for on December 5, 1951, they filed separate motions to dissolve and to discharge "the temporary writ of injunction issued in said cause by Your Honor." And on December 13, 1951, they filed an answer reserving their right to a hearing on the motions filed on December 5.

On December 22, 1951, the complainant was notified that January 7, 1952, was the day tentatively set for hearings on the motions to dissolve and discharge.

On January 4, 1952, the Trading Company filed a petition directed to Judge Carnley averring in substance that Grimes and wife contemptuously and willfully refused to obey the writ of injunction averred to have been issued on November 30, 1951, and refused to permit the Trading Company to gather the peanuts. The petition prayed that a rule be issued directed to Grimes and wife to appear and show cause, if any they had, why they should not be punished "as for a contempt." The petition or application also contained the further prayer: "Your Complainants further pray that a hearing to dissolve the injunction be continued or that the hearing on the within petition together with an accounting between your complainants and respondents be heard by your Honor on the same date." On the day that the petition was presented to him, Judge Carnley signed an order or decree directing that the respondents, Grimes and wife, appear before him on January 7, 1952, and show cause, if any they had, why they should not be punished for contempt. If this order or decree was ever served on respondents the record fails to disclose it.

On the following day, January 5, 1952, the Trading Company amended its bill of complaint by adding thereto another paragraph purporting to aver facts sufficient to bring about an accounting between the parties and there was a prayer for an accounting.

The respondents, J. F. Grimes and wife, filed answer to the bill as amended on January 7, 1952, the day previously set for the hearings on the motions to discharge and dissolve, as well as the day set for the respondents to make return to the order signed by Judge Carnley on January 4, 1952.

At the opening of the hearing on January 7, 1952, the trial court stated that the hearing would be limited to the motions to discharge and dissolve the temporary injunction, which he stated had been previously granted. The trial court then made the statement that he was going to deny the motion to discharge. Counsel for both parties appear to have acquiesced in this statement and to have considered that it completely

disposed of the motion to discharge. But no decree was ever rendered or entered denying that motion.

After several witnesses had been examined, the trial court asked for a conference with the attorneys. Following that conference counsel for the Trading Company stated: "Complainants move the Court to dissolve the injunction, inasmuch as it has served its purpose; and counsel for complainants is agreeable to a continuance of that part of the cause asking for an accounting, on the amended bill of complaint." The trial court thereafter made the following statement: "And it is agreed between the counsel for complainants and counsel for respondents that the matters dealing with and relating to the temporary injunction that the Court has issued is more or less a moot question now; that to proceed further with it would serve no useful purpose; and that the Court would proceed to hear that aspect of the bill which deals with an accounting between the parties. The Court grants that motion to dismiss the Count 1 or paragraph 1 of the bill of complaint, dealing with injunction and retains jurisdiction of the aspect praying for an accounting."

No entry was ever made as far as we can determine of an order or decree dismissing or dissolving the so-called temporary writ of injunction. However, all parties seem to have thereafter treated the statement of the court as being a final disposition of the so-called temporary writ of injunction.

It was agreed that the hearing be continued until January 14, 1952, and that at that time testimony be taken relating to an accounting between the parties. Up to this point no mention was made of the contempt order which, as heretofore shown, had been set for hearing on that date.

When the hearing was reconvened on January 14, 1952, the trial court immediately made the following statement:

"All right, this cause was continued to this date on the question of an accounting as prayed for in the bill of complaint. Count One of the bill of

complaint prayed for a temporary writ of injunction, and upon the basis of that when the bill of complaint was filed the Court issued temporary injunction. On the previous hearing, and on motion of complainants, the temporary injunction heretofore granted was dissolved, and this cause continued to this day for the purpose of Count Two of the bill of complaint, which prayed for an accounting between the parties."

In reply to a question from counsel for the Trading Company, the court stated that the "contempt feature" had not been affected, but that for the time being the hearing would proceed on the question of the accounting. Counsel for the respondents apparently agreed that under the pleadings the court had jurisdiction to proceed on that issue. No demurrer was ever interposed to the amended bill nor was the jurisdiction of the court ever questioned as to the accounting feature.

After several witnesses had been examined, the trial court interrupted the cross-examination of the witness called by the Trading Company and stated in effect that it appeared from the pleadings that there was an irregularity in the issuance of the writ of injunction and that the motion to discharge possibly should have been granted; that because of that irregularity the "petition" for the rule to show cause why the respondents should not be held in contempt should be dismissed and the court then stated that it was dismissed. But again no decree was ever rendered or entered in so far as we can determine. The court further stated:

"Now in view of the discussion between solicitors, and the statements made to the Court upon the last hearing in this cause, and which we have to some extent gone into this morning on the Count Two, which prayed for an accounting between the parties, and the Court having assumed the jurisdiction of this complaint so far as an accounting between the parties is prayed, and the respondents having come in and joined issue on it, and to see if there is a need for an accounting and if there is, they pray the Court to assume jurisdiction and to decree an accounting and hear the same to a final conclusion in order to do equity between the parties, the Court is going to proceed to hear it. So, consequently, the court is going to restrict any further issues in this particular cause, and for the purpose of this hearing, to an accounting between the parties."

We understand the record to show that the parties all acquiesced in the court's statement to the effect that the hearing would proceed on the so-called accounting feature of the case.

After several more witnesses were examined, the trial court again interrupted the proceedings to make another statement wherein he retracted his previous remarks to the effect that the petition for the rule to show cause why the respondents should not be held in contempt of court was dismissed. Counsel for the Trading Company was then told that he could present testimony relating to that issue if he so desired.

Shortly after that statement was made, the trial court announced that the hearing would be continued until Monday morning, January 24, 1952.

When the hearing reconvened on January 24, 1952, the court on motion of counsel for Grimes dismissed the contempt proceedings. After considerable discussion between the court and counsel representing the respective parties, the taking of testimony proceeded on the question of the accounting. The hearing was concluded on that day and the agreement to have the peanuts picked, to which agreement we have heretofore referred, was made. The decree of the trial court was entered on April 28, 1952. Submission in this court was on November 3, 1953.

█ We understand that the appellant, Grimes, seeks to have us reverse the trial court on some of the rulings made in connection with the so-called writ of injunction. The appeal, of course, is not attempted to be taken from any of those rul-

ings and of course no appeal could be taken therefrom inasmuch as no decrees were ever entered and those rulings are not subject to being assigned as error on the appeal from the final decree, which merely dealt with the proportion of the proceeds received from the sale of the peanuts to which each of the parties was entitled.

■ The trial court taxed the costs incident to the petition to show cause why the respondents should not be held in contempt of court against the Trading Company. The other costs of the case were taxed against the respondents, and the appellant, J. F. Grimes, complains here of that feature of the decree. We see no occasion to deal at length with this question. The matter of taxation of costs in a case of this kind is largely within the discretion of the trial court and we do not feel justified in disturbing the decree in so far as it relates to the taxation of costs. Equity Rule 112; Lucas v. Lucas, 258 Ala. 515, 64 So.2d 70.

■ The Trading Company has made a cross assignment of error relative to the action of the trial court in dismissing the contempt proceedings. Aside from the fact that there was no decree ever entered in that connection, it appears that the brief filed by the Trading Company in support of the cross assignment was not filed when the cause was submitted. Hence under our holding in the recent case of Andrews v. Sullivan, 260 Ala. 291, 69 So.2d 870, this cross assignment of error will not be considered.

The informal manner in which this case was tried below has resulted in a most confusing record and the writer has experienced considerable difficulty in determining from the record, the assignments of error, and the briefs the issues properly before this court. We have attempted to dispose of the questions which we think properly presented.

As before indicated, this is an unusual record and we feel that the trial court, in view of the position taken by the parties, should not be held to have erred in rendering a decree determining the amount of the proceeds derived from the sale of the peanuts to which the parties were entitled and as we have heretofore indicated, we will not disturb his findings of fact on that issue.

We feel that the decree of the trial court should be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.